2016 IL App (1st) 133201

FIRST DIVISION
March 14, 2016

No. 1-13-3201

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 16999 (02) |
| | ) | |
| KARL HAYWOOD, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Karl Haywood, appeals the judgment of the circuit court denying his motion to withdraw his guilty plea.   On appeal, defendant contends that he is entitled to a new hearing on his motion where he never received a ruling on his prior motion for substitution of judge. Defendant contends that the hearing on his motion was also deficient because the judge had a duty to recuse himself where he had personal knowledge of the underlying motion for substitution of judge.   He further contends that he is entitled to a new hearing because during the hearing (1) the trial court considered information from his codefendant's trial; (2) the trial court improperly permitted testimony regarding statements defendant made during a fitness examination; and (3) the trial court misrepresented to defendant that his right to substitution of judge would be protected.   Finally, defendant contends that he is entitled to a new sentencing

hearing because the trial court sentenced him without a written presentence report or a finding as to his criminal history. For the following reasons, we affirm.

¶ 2                                      JURISDICTION

¶ 3     The trial court denied defendant's motion to withdraw his guilty plea on September 26, 2013. Defendant filed a notice of appeal on September 26, 2013. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603, 606 (eff. Feb. 6, 2013), governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                                      BACKGROUND

¶ 5     Defendant and his brother, Donald Haywood, were charged with first degree murder in the July 5, 2003, death of Ruby Lasecki, but had separate proceedings before Judge Vincent Gaughan. In pretrial proceedings, defendant was represented by Stuart Katz, presently a judge in the juvenile court. At a court appearance on February 3, 2005, the trial court held defendant in direct contempt for "showing utter disrespect" to the court and attempting to walk out of the courtroom. Due to defendant's behavior, defense counsel Katz requested that defendant be reexamined for fitness to stand trial. The report subsequently concluded that defendant was fit to stand trial.

¶ 6     At a hearing on April 6, 2005, while represented by Katz, defendant presented the trial court with two *pro se* motions: a motion for substitution of judge and a motion for the appointment of new counsel. Defense counsel stated that he was "not joining in those motions, [he was] not filing those on [defendant's] behalf." In support of the motion for substitution of judge, defendant alleged that he "heard racise [*sic*] remarks" as he entered the courtroom. The

trial court entered and continued the motions, and the circuit court clerk stamped them as filed on April 6, 2005. The record does not show that the trial court ruled on defendant's motions.

¶ 7 While defendant's case was pending, his brother was tried and convicted of first degree murder on the basis of accountability and sentenced to 55 years in prison. Defendant's trial was scheduled to begin on June 2, 2006; however, on that day defendant and his counsel requested a plea conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997). The trial court specifically asked defendant whether he requested the conference and defendant answered, "Yes." The trial court admonished defendant that "[b]ased solely upon what I hear at that conference you will not be allowed to substitute judges but all your other rights concerning substitution of judges will be protected, do you understand that?" Defendant answered, "No." This exchange followed:

"THE COURT: Okay. What don't you understand?

DEFENDANT: You said about substitution of judge.

THE COURT: All your other rights – you cannot say, Judge, you heard this at the conference, I want to substitute judges.

MR. KATZ [Defense attorney]: Another judge.

THE COURT: That will not be the basis for a substitution of judges, do you understand that?

DEFENDANT: Yes, sir.

THE COURT: But all your other rights, if you have them, would be protected concerning substitution of judges, do you understand that?

DEFENDANT: Yes, sir.

THE COURT: All right. Now, do you still want the conference?

DEFENDANT: Yes, sir."

¶ 8     Following the Rule 402 conference, defendant agreed to plead guilty.   The trial court proceeded to admonish defendant.   The court asked him whether he understood that he was pleading guilty to first degree murder and could be sentenced from 20 to 60 years' imprisonment. Defendant answered, "Yes, sir."   The trial court also admonished that defendant must serve three years of mandatory supervised release in addition to his sentence, and probation or conditional discharge was not available.   It informed defendant that by pleading guilty, he has given up his right to a bench trial and a jury trial.    The trial court told defendant that he was "the only person in the world" who could give up his right to a jury trial, and that neither the court or defense counsel could order him to give up that right.   Defendant stated that he understood. When the trial court asked whether he understood that by signing the jury waiver he was giving up his right to a jury trial, defendant answered, "Yes, sir."   The following exchanged then occurred:

> "THE COURT: Other than the agreement made to you by your attorney, Mr.
> Haywood, has any other promises or agreements been made to you to make you plead
> guilty here today?
>
> DEFENDANT: No.
>
> THE COURT: Has anybody forced you to plead guilty?
>
> DEFENDANT: No, sir.
>
> THE COURT: Are you pleading guilty of your own free will?
>
> DEFENDANT: Yes, sir."

¶ 9     The trial court took into consideration "the motions that have been filed in both [defendant's] and [his] brother's cases, the evidence presented there, the evidence presented at

Donald Haywood's jury trial and the additional evidence presented at this conference" and found a sufficient basis for defendant's plea. It indicated that during the plea conference the State presented information about defendant's family and work background, his educational status, and his past and present criminal background. It further found that defendant understood "the nature of the charges, the possible penalties, his legal rights and that he's pleading guilty voluntarily and knowingly" and it accepted defendant's plea. The trial court stated that defendant had signed a waiver of presentence report and both defendant and the State agreed that they were giving up their rights to that report. After hearing evidence in mitigation, and asking defendant whether he wanted to make a statement (he did not), the trial court sentenced defendant to 50 years' imprisonment for first degree murder. The trial court informed defendant that he could file a written motion to vacate his guilty plea within 30 days. The trial court further stated that if it agreed to vacate defendant's plea upon a written motion to vacate, all other counts against defendant would be reinstated. Defendant stated that he understood.

¶ 10 On June 23, 2006, defendant filed a *pro se* "Motion To Withdraw Guilty Plea and Vacate Sentence." In the motion, defendant alleged "failure of Attorney counsel" to "put up a [*sic*] argument at all for his client" and counsel "did not call the defendant witness for his upcoming trial for testimony." Defendant also alleged that he "was currently taking medication and had no knowledge of the Law and his rights were violated." At the hearing on the motion, defense counsel did not make arguments or amend the *pro se* petition. Counsel also filed a Rule 604(d) certificate. Ill. S. Ct. R. 604(d) (eff. Dec. 13, 2005). The trial court denied defendant's motion to withdraw the guilty plea and defendant appealed. On appeal, this court found that defense counsel should not have represented defendant at the hearing on the motion to withdraw because

defendant alleged ineffective assistance of counsel. The dismissal of defendant's motion was vacated and the cause remanded for appointment of new counsel and further proceedings.

¶ 11 On March 25, 2010, defendant's new counsel filed an amended motion to withdraw, arguing that defendant's plea was involuntary because his trial counsel was ineffective for not ensuring that his *pro se* motions for substitution of judge and for new counsel were ruled on, and for failing to contact alibi witnesses. Defendant alleged that "he heard racist remarks as he was entering the courtroom" and that he and the Judge Gaughan "exchanged very negative and hostile words when [defendant] tried to say important things about his case." Defendant also averred that had he received a new judge or appointed counsel, he would not have pled guilty.

¶ 12 Counsel filed a supplemental motion to withdraw on October 6, 2010, further alleging that defendant's plea was involuntary because "he had no choice" and that the trial court never ruled on his *pro se* motion for new counsel where counsel refused to argue issues on defendant's behalf, failed to investigate nine potential witnesses, and would not arrange to visit defendant to develop his defense. Defendant also alleged that the trial court never ruled on his *pro se* motion for substitution of judge and that in the summer of 2004, "he thought he heard Judge Vincent Gaughan say something like the following: nigger wasting taxpayer money, he's guilty anyways." He stated that Judge Gaughan was speaking to the assistant State's Attorney, who was a pregnant woman. Defendant alleged that he also heard Judge Gaughan state "something like *** nigger going to IDOC." He further alleged that he was "misled regarding the consequences of his plea" on the issue of his motion for substitution of judge and did not realize that once he pled guilty, "it would be too late for a motion for a new judge."

¶ 13 On December 29, 2010, defendant filed a motion for recusal pursuant to Illinois Supreme Court Rule 63(C)(1) (eff. Apr. 16, 2007), requesting that Judge Gaughan recuse himself to avoid

the appearance of impropriety and because he may be a material witness in the motion to withdraw proceeding. The motion was transferred for hearing to Judge Evelyn Clay. At the hearing, Judge Clay noted that defendant filed his *pro se* motion for substitution of judge "a year before final disposition" and at the time defendant was represented by an attorney. Therefore, Judge Clay did "not consider those valid motions. They were actually complaints and requests, because at all times, at all times, defendant was represented by an attorney of record, Mr. Katz." She found that Judge Gaughan properly admonished defendant at the Rule 402 conference regarding the substitution of judges.

¶ 14    Judge Clay also considered defendant's claim that he heard the trial court use a racial epithet and that "he is going to IDOC" and is "wasting taxpayer money." She also noted that the remarks were "not of record" and defendant did not specify or allege that those remarks were directed at him. She reasoned that defendant "did not even say the trial judge used his name, defendant does not know whether the trial court was referencing the defendant." Judge Clay denied the motion to recuse, finding "a lack of specificity" in the motion as to the improper remarks, and that the remarks were too remote in time to affect the trial court's impartiality at the Rule 402 conference. The matter was returned to Judge Gaughan for a hearing on defendant's motion to withdraw his guilty plea.

¶ 15    At the hearing, defendant testified that in the summer of 2004, as he was being brought into the courtroom, he heard Judge Gaughan say to the prosecutors, "The nigger guilty. He going to IDOC anyway." In the spring of 2005, defendant heard Judge Gaughan tell Katz and a male prosecutor that, "the nigger guilty anyway. He wasting taxpayer's money." Defendant later spoke with Katz about the judge's remarks but Katz told him he was not going to get a new judge. Defendant then filed his *pro se* motions for substitution of judge and for new counsel.

Defendant testified that Katz told him he might as well plead guilty because Katz would not be calling any witnesses. He informed Katz that he wanted his *pro se* motions heard. Defendant testified that he was confused by the trial court's admonishments at the Rule 402 conference. Specifically, when the trial court explained to defendant his rights concerning the substitution of judge, he believed the trial court was saying defendant's right to file the substitution of judge motion would be "protected" and his *pro se* motions would be heard after he pled guilty.

¶ 16    On cross-examination, defendant stated that he did not recall whether he was given any warnings or if he signed any waivers prior to the conference. He did not recall whether the trial court informed him of what a Rule 402 conference entailed, but he recalled that his rights concerning the substitution of judge would be protected. Defendant did recall that his counsel informed him that his sentence would be 50 years' imprisonment if he pled guilty. However, when asked whether he was aware of what offenses the State charged him with Defendant answered, "No. I was – I was currently taking medication. No, I wasn't aware." This exchanged followed:

"MR. MURPHY [Assistant State's Attorney]: You just said you were currently taking medication?

DEFENDANT: I was – I was on medication then at the time.

MR. MURPHY: When, what time?

DEFENDANT: At the time before or after, now, still – still – still today.

MR. MURPHY: Okay. Well, so is it your testimony that you didn't know what – what charges you were facing?

DEFENDANT: I don't remember, man."

He also stated that he was not aware that he was eligible for the death penalty. He did not remember whether his brother had a jury trial and he did not remember the State's evidence against him, including his handwritten confession and that two eyewitnesses identified him in a lineup.

¶ 17 Defendant also called defense counsel Katz to testify at the hearing. Katz acknowledged that defendant had filed *pro se* motions for substitution of judge and for new counsel, but he did not recall if the trial court ruled on the motions before defendant pled guilty. Katz testified that while defendant's case was pending, his codefendant brother had a jury trial with almost identical evidence, and was found guilty and sentenced to 55 years' imprisonment. When he met with defendant, they discussed options including a Rule 402 conference. Defendant agreed to the conference and Katz reviewed each paragraph of the Rule 402 conference waiver form with defendant. Defendant stated that he understood and he signed the form. The trial court offered defendant a sentence of 50 years' imprisonment in exchange for his guilty plea to one count of first degree murder with all other counts being dismissed. When informed of the trial court's offer, defendant responded, "let's roll with it."

¶ 18 Regarding defendant's motion for new counsel, Katz stated that he met with defendant 8 to 10 times, not including the times defendant was in court. He spoke with one of the alibi witnesses provided by defendant, Desiree Moody, but she told him that she had not seen defendant at all on the day of the murder. Defendant gave him a list of nine witnesses but Katz could not locate any of them and even sent out an investigator to try to find them. Katz denied that defendant repeatedly asked about the progress of his *pro se* motions prior to the plea. Katz also testified that he never heard Judge Gaughan make racist comments, and if he had he would have filed a motion for substitution of judge along with a complaint to the Judicial Inquiry

Board.  Defendant never discussed with Katz the racist comments mentioned in his *pro se* motion for substitution of judge.

¶ 19    The State called three assistant state's attorneys who assisted with defendant's case to testify, and they all stated that they never heard Judge Gaughan make racist comments towards defendant.  A court reporter assigned to the courtroom stated that she never heard the judge make racist comments.

¶ 20    Over the defense's objection, the State called Dr. Erick Neu to testify.  Prior to Dr. Neu's testimony defendant filed a motion to bar the testimony pursuant to section 104-13 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-13 (West 2010)), which states that defendant's statements during a fitness examination cannot be used against him unless he alleges an insanity defense or a defense of drugged or intoxicated condition.  The trial court denied the motion, finding that the provision is limited to use of the statements during trial as opposed to a hearing on a motion to vacate a guilty plea, and that defendant was informed that the interview would not be confidential.

¶ 21    Dr. Neu testified that he interviewed defendant on October 27, 2003, due to a court order requesting the assessment of defendant's fitness to stand trial.  Although defendant did not sign anything, Dr. Neu informed defendant of the nonconfidential nature of the interview and what parties would be privy to the information, and defendant was able to paraphrase his understanding.  When asked about his understanding of his trial counsel's role, defendant stated, "Fuck him." When explaining what happened at his last court appearance, defendant responded, "this is bullshit, I was going to fight the police.  They're bitches."  Defendant also stated that he would "attack the judge" if he did not like what the judge told him and he would "fuck up [his] brother for lying."  After the interview, Dr. Neu spoke with his supervisor about

defendant's threats and his supervisor advised him "to contact the parties involved as well as write a letter to the Court describing the threats."

¶ 22 The trial court denied defendant's motion to withdraw his guilty plea, finding that he failed to show that defense counsel did not investigate alibi witnesses and that if counsel had presented an alibi defense it would have failed because there were no witnesses to support it. The trial court further found that defendant's motion for substitution of judge would have been denied because defendant's allegation that Judge Gaughan made racist remarks was refuted by multiple witnesses. The trial court also determined that had defendant proceeded to trial "he would have been found guilty" because his brother was found guilty and sentenced to 55 years' imprisonment. The trial court stated that the evidence against defendant made him even more culpable for the murder than his brother. Defendant filed this timely appeal.

¶ 23                                    ANALYSIS

¶ 24 On appeal, defendant alleges that his guilty plea is void because the trial court never ruled on the *pro se* motions he filed prior to the Rule 402 plea conference. When the issue arose during the hearing on defendant's motion for recusal, Judge Clay noted that defendant filed his *pro se* motions while he was represented by an attorney. Therefore, she did "not consider those valid motions." At the time defendant presented the motions to the trial court, defense counsel stated that he was "not joining in those motions, [he was] not filing those on [defendant's] behalf." The trial court need not consider defendant's *pro se* motions while he is represented by competent counsel. *People v. Pondexter*, 214 Ill. App. 3d 79, 87 (1991) (the right to self-representation and the right to assistance of counsel "cannot be exercised at the same time").

¶ 25 Furthermore, although defendant's *pro se* motions were filed with the clerk, the mere act of filing in the clerk's office does not constitute a sufficient application. *People v. Taggart*, 268

Ill. App. 3d 84, 85 (1994). The party filing the motion has the responsibility "to request the trial judge to rule on it, and when no ruling has been made on a motion, the motion is presumed to have been abandoned absent circumstances indicating otherwise." *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433 (2007); see also *People v. Johnson*, 159 Ill. 2d 97, 123 (1994) (supreme court found that defendant's failure to pursue his motion for substitution of judge in the four months from the time he filed it to the beginning of his trial, without good reason, constituted abandonment of the motion). Here, defendant filed his motions one year prior to his plea conference. Defense counsel stated that defendant never asked about the progress of his *pro se* motions prior to the plea. Defendant also could have asked about his *pro se* motions during his conference when the trial court admonished him on the subject of substitution of judges, but he did not do so. The exchanges between the trial court and defendant throughout the record show that defendant had no reservations about making his opinions and thoughts about the proceedings known, and he never brought up the issue prior to his plea. We find that defendant abandoned his previously filed *pro se* motions.

¶ 26 Defendant also argues that Judge Gaughan should not have heard his second motion to withdraw his guilty plea, but rather should have recused himself because he had personal knowledge of the facts in the underlying issue of defendant's motion for substitution of judge, and to avoid the appearance of impropriety. "The right of a defendant to an unbiased, open-minded trier of fact is so fundamental to our system of jurisprudence that it should not require either citation or explanation." *People v. Eckert*, 194 Ill. App. 3d 667, 673 (1990). This right to a fair hearing extends to an evidentiary hearing on a motion to withdraw a guilty plea. *People v. Harris*, 384 Ill. App. 3d 551, 560 (2008).

¶ 27    Defendant filed a motion to recuse pursuant to Rule 63(C)(1), which directs judges to voluntarily recuse themselves where their impartiality may reasonably be questioned, including situations involving the appearance of impropriety.   See *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 43.   However, the judge named in defendant's motion, Judge Gaughan, had previously conducted hearings at the plea conference, entered defendant's guilty plea, and denied defendant's initial motion to withdraw his guilty plea.   As our supreme court determined in *O'Brien*, the legislature did not find the "lower, appearance of impropriety standard" appropriate "once a substantive ruling in a case has been made."   *Id*.   In that situation, the issue is better addressed by a petition for substitution of judge for cause under the Code.   *Id*. ¶ 46.

¶ 28    Although defendant filed a motion to recuse, it appears from the record that the motion was properly treated as a petition for substitution of judge pursuant to section 114-5(d) (725 ILCS 5/114-5(d) (West 2006)).   This section allows for a second judge to hear the petition, allaying due process concerns, and "ensures that any substitution coming after a substantive ruling has been made is the result of a proven bias or high probability of the high risk for actual bias and is not a mere ploy for tactical advantage."   *O'Brien*, 2011 IL 109039, ¶ 46.   In other words, the forced removal of a judge in such circumstances requires that actual prejudice, "that is, either prejudicial trial conduct or personal bias," be established.   *Id*., ¶ 30.   Although the supreme court in *O'Brien* referred to section 2-1001(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-1001(a)(3) (West 2006)), that section is merely the civil counterpart to section 114-5(d).   *In re Estate of Wilson*, 238 Ill. 2d 519, 553 (2010).

¶ 29    Therefore, to prevail on a motion for substitution of judge for cause, defendant must "demonstrate that there are facts and circumstances which indicate that the trial judge was prejudiced."   *People v. Jones*, 219 Ill. 2d 1, 18 (2006).   "Prejudice" is defined as "animosity,

hostility, ill will, or distrust towards this defendant." (Internal quotation marks omitted.) *People v. Patterson*, 192 Ill. 2d 93, 131 (2000). Defendant bears the burden of establishing actual prejudice, not just the possibility of prejudice, and a reviewing court will not reverse the trial court's determination on the motion unless its finding was against the manifest weight of the evidence. *Jones*, 219 Ill. 2d at 18. Findings are against the manifest weight of the evidence if they are clearly erroneous or the record supports an opposite conclusion. *People v. Mercado*, 244 Ill. App. 3d 1040, 1047 (1993).

¶ 30 Defendant's motion was transferred for a hearing to a second judge, Judge Clay. In making her determination, Judge Clay considered defendant's claim that he heard Judge Gaughan use a racial epithet and state that "he is going to IDOC" and is "wasting taxpayer money." She noted that the remarks were "not of record" and defendant did not specify or allege that those remarks were directed at him. She reasoned that defendant "did not even say the trial judge used his name, defendant does not know whether the trial court was referencing the defendant" in making those remarks. No other person present in the courtroom when Judge Gaughan allegedly made the racist remarks testified to hearing the judge make such remarks. Judge Clay denied the motion to recuse, finding "a lack of specificity" in the motion as to the improper remarks, and that the remarks, allegedly made a year prior to defendant's plea, were too remote in time to affect the trial court's impartiality at the Rule 402 conference. Judge Clay's finding that defendant failed to establish actual prejudice was not against the manifest weight of the evidence.

¶ 31 Defendant also argues that he should have been granted a substitution of judge because Judge Gaughan had personal knowledge about the racist comments he allegedly made, citing as support *People v. Wilson*, 37 Ill. 2d 617, 621 (1967), and *People v. Washington*, 38 Ill. 2d 446

(1967). These postconviction cases were decided prior to the existence of section 114-5(d) of the Code, and were based on the law at the time that "the right to a change of venue on account of the alleged prejudice of the judge is absolute if" the petition complied with certain statutory provisions. *People v. Moore*, 26 Ill. 2d 236, 237 (1962). This right to substitution is no longer absolute (see *People v. Melka*, 319 Ill. App. 3d 431, 442 (2000)), and as discussed above, our supreme court in *O'Brien* has more recently required a showing of actual prejudice before a petition for substitution of judge is granted. There is no evidence in the record that the alleged remarks referenced defendant, or even that Judge Gaughan made the remarks at all. Defendant did not meet his burden of establishing actual prejudice.

¶ 32    Defendant next contends that he is entitled to a new hearing on his motion to withdraw his guilty plea where the trial court relied in part on evidence adduced from his brother's trial. Defendant argues that rulings based on information outside of the record violates due process, citing as support *People v. Dameron*, 196 Ill. 2d 156 (2001); *People v. Yarbrough*, 93 Ill. 2d 421 (1982); *People v. Cunningham*, 2012 IL App (3d) 100013; *People v. Jackson*, 409 Ill. App. 3d 631 (2011); *People v. Sullivan*, 72 Ill. 2d 36 (1978); and *People v. Barham*, 337 Ill. App. 3d 1121 (2003). However, these cases involve the trial court considering evidence obtained outside of the courtroom and not presented by counsel, in making a determination of the sufficiency of the evidence to convict the defendant of a crime beyond a reasonable doubt. The trial court's actions were improper because "[d]ue process requires that a criminal defendant have all the evidence against him considered in open court." *Barham*, 337 Ill. App. 3d at 1135. The case before us involves a hearing on a motion to withdraw a guilty plea, not a proceeding to determine whether the evidence is sufficient to convict defendant of the crime charged. Leave to withdraw a guilty plea is not granted as a matter of right, but rather to correct a manifest

injustice. *People v. Pullen*, 192 Ill. 2d 36, 39 (2000). Defendant does not cite to a case precluding the trial court from taking into account evidence adduced at a codefendant's trial, over which the court also presided, involving the same victim, the same facts, and the same witnesses, to determine whether a manifest injustice occurred when defendant pled guilty.

¶ 33 Defendant also contends that during the hearing, the trial court improperly allowed the testimony of Dr. Neu in violation of section 104-14 of the Code (725 ILCS 5/104-14 (West 2010)). This section provides that statements made by the defendant and information obtained in the course of court-ordered fitness examinations "shall not be admissible against the defendant unless he raises the defense of insanity or the defense of drugged or intoxicated condition." 725 ILCS 5/104-14(a) (West 2010). The parties argue whether this provision applies to hearings on a motion to withdraw a guilty plea, or only to criminal trial proceedings. However, we need not address the applicability of section 104-14 to this hearing because defendant first raised the issue of his drugged condition and state of mind.

¶ 34 During defendant's cross-examination at the hearing to withdraw his plea, he was asked whether he was aware of what offenses the State charged him with and Defendant answered, "No. I was – I was currently taking medication. No, I wasn't aware." He also stated that he was not aware that he was eligible for the death penalty and he did not remember the State's evidence against him, including his handwritten confession and that two eyewitnesses identified him in a lineup. When asked when he was on the medication, defendant answered "before or after" and "still today." In response, the State presented Dr. Neu who testified about his fitness examination of defendant. During the examination, when Dr. Neu asked defendant about his understanding of trial counsel's role and what had happened at the last court proceeding, defendant cursed and made the threatening statements as detailed above. Since defendant first

raised the issue of his drugged condition and how it affected his state of mind during the proceedings and at the plea conference, allowing testimony regarding his fitness examination did not deprive him of a fundamental right regardless of whether defendant raised the issue as an affirmative defense. *People v. Pulliam*, 176 Ill. 2d 261, 278, 280 (1997), citing as support *Buchanan v. Kentucky*, 483 U.S. 402, 422-23 (1987) (prosecution may constitutionally present evidence from a court-ordered fitness examination if defendant first presents psychiatric evidence); *People v. Kashney*, 111 Ill. 2d 454, 461 (1986) (whether or not defendant raised the affirmative defense of insanity not dispositive on this issue where defendant first introduced psychiatric evidence).

¶ 35     Defendant also argues that he should be allowed to withdraw his guilty plea because the trial court misrepresented the law regarding substitution of judges during the conference, and it failed to rule on defendant's previously filed *pro se* motions.    Entering a guilty plea is a grave and serious endeavor, not a " 'temporary and meaningless formality reversible at the defendant's whim.' "    *People v. Evans*, 174 Ill. 2d 320, 326 (1996) (quoting *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975)).    Therefore, defendant does not have an automatic right to withdraw a guilty plea, but rather must show a manifest injustice under the circumstances. *People v. Jamison*, 197 Ill. 2d 135, 163 (2001).    A reviewing court will not reverse the trial court's decision whether to grant or deny a motion to withdraw a guilty plea absent an abuse of discretion.    *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).

¶ 36     Due process requires that the court accept defendant's guilty plea only upon an affirmative showing that defendant entered his plea voluntarily and knowingly.    *People v. Davis*, 145 Ill. 2d 240, 249 (1991).    Illinois Supreme Court Rule 402 (eff. July 1, 2012), addresses this requirement.    Rule 402(a) provides that the court admonish defendant and

ensures he understands (1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law; (3) that he has a right to plead not guilty or guilty; and (4) if he pleads guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him or her. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). Rule 402(d)(1) states that regarding plea discussions and agreements, the court may make a recommendation as to the appropriate sentence. Ill. S. Ct. R. 402(d)(1) (eff. July 1, 2012). "However, if the defendant rejects the judge's recommendation and he or she wishes to have a trial on the charges, the defendant may not obtain another judge solely on the basis that the judge participated in the conference and is aware of the facts and circumstances surrounding the incident as well as the defendant's background. This means that the defendant will be waiving his or her right to request a substitution of judge based upon the judge's knowledge of the case." *Id*.

¶ 37 Defendant first contends that the trial court misrepresented the law regarding defendant's right to substitution of judges after pleading guilty, and therefore he believed his right to a substitution of judge would be protected if he pled guilty. At the conference, the trial court informed defendant that he could not say, "Judge, you heard this at the conference, I want to substitute judges" and "[t]hat will not be the basis for a substitution of judges, do you understand that?" Defendant answered, "Yes, sir." The court continued, "But all your other rights, if you have them, would be protected concerning substitution of judges, do you understand that?" When asked whether he still wanted the plea conference defendant responded, "Yes, sir."

¶ 38 The trial court, however, did not inform defendant that the substitution of judge issue would remain relevant only if he rejects the plea recommendations and elects to have a trial on the charges, which may have confused defendant. Defendant does not provide, and we have not found, any cases holding that the court's admonishment here was improper. Even if the trial

court did not properly admonish defendant about the substitution of judges, "the failure to properly admonish a defendant, standing alone, does not automatically establish grounds for reversing the judgment or vacating the plea." *Delvillar*, 235 Ill. 2d at 520. Rather, defendant must show that he was prejudiced by the inadequate admonishment. *Davis*, 145 Ill. 2d at 250.

¶ 39 Defendant argues that he was prejudiced because he would not have pled guilty if the trial court had ruled on his *pro se* motion for substitution of judge. However, in his initial *pro se* motion to withdraw his guilty plea filed about two weeks after the trial court entered his plea, defendant stated that his only reason for withdrawing his plea was "failure of Attorney Counsel" which is an issue not on appeal in this case. Defendant also has not shown that he would have prevailed on his motion for substitution of judge given that he filed the same motion based on the same allegations during the proceedings on his motion to withdraw, the motion was heard before a second judge, and that judge denied defendant's motion. Defendant has not established that he was prejudiced by the trial court's admonishment.

¶ 40 Furthermore, in considering defendant's motion to withdraw his guilty plea, the reviewing court focuses on whether the guilty plea was knowingly and voluntarily made. *Delvillar*, 235 Ill. 2d at 520. In light of the thorough discussions that took place at the Rule 402 conference prior to the trial court accepting defendant's guilty plea, the record shows that defendant made his plea knowingly and voluntarily. The court admonished defendant on the nature of the charges against him, the applicable sentences, defendant's right to plead not guilty, and in pleading guilty his waiver of the right to a jury trial and to confront any witnesses against him. The trial court also asked defendant whether he was pleading guilty "of [his] own free will" and defendant answered, "Yes, sir." His defense counsel testified that defendant understood the proceeding and signed the form. When informed about the agreement to enter a plea of guilty

to one count of first degree murder and sentence of 50 years' imprisonment, with all other counts dismissed, defendant responded, "let's roll with it." We find that defendant's guilty plea was made knowingly and voluntarily.

¶ 41    Defendant's final contention is that he is entitled to a new sentencing hearing because the trial court sentenced him without a written presentencing report or a finding as to his criminal history as required by section 5-3-1 of the Unified Code of Corrections (730 ILCS 5/5-3-1 (West 2010)). We note that both parties agreed to waive the pre-sentence report. More importantly, defendant acknowledges in his brief that his plea was a negotiated plea and the record reflects that the plea was negotiated. Our supreme court has held that if a defendant wants to challenge his sentence following entry of a negotiated guilty plea, "he must move to withdraw the guilty plea and vacate the judgment so that, in the event the motion is granted, the parties are returned to the *status quo*." *Evans*, 174 Ill. 2d at 332. Defendant cannot seek a new sentencing hearing while a negotiated plea remains in place. *Id*. at 327 (pursuant to principles of contract, a defendant's unilateral effort to reduce his sentence while holding the State to its part of the bargain "cannot be condoned"). Since we have affirmed the trial court's denial of defendant's motion to withdraw his guilty plea, and the negotiated plea agreement remains in effect, defendant has no basis on which to challenge his sentence.

¶ 42                                    CONCLUSION

¶ 43    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 44    Affirmed.