# Illinois Official Reports

## Appellate Court

---

> ### *People v. Haywood*, 2021 IL App (1st) 190809

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KARL HAYWOOD, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-19-0809 |
| Filed<br>Rehearing denied | September 17, 2021<br>October 21, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-CR-16999; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Michael H. Orenstein, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Hareena Meghani-Wakely, and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Connors and Oden Johnson concurred in the judgment and opinion. |

**OPINION**

¶ 1       Pursuant to a 2006 negotiated guilty plea, defendant, Karl Haywood, was convicted of first degree murder and sentenced to 50 years' imprisonment. Following postplea proceedings, we affirmed on direct appeal. *People v. Haywood*, 2016 IL App (1st) 133201. Defendant now appeals from the summary dismissal of his 2018 postconviction petition, contending that his sentence is at least arguably unconstitutional because he was 20 years old at the time of his offenses and the trial court imposed a *de facto* life sentence without due consideration of his youth and its attendant characteristics in mitigation. For the reasons stated below, we affirm.

¶ 2                                    I. JURISDICTION

¶ 3       Defendant filed a postconviction petition in December 2018, which the circuit court dismissed on March 6, 2019. Defendant filed his notice of appeal on April 1, 2019. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 651(a) (eff. July 1, 2017) governing appeals from a final judgment in a postconviction proceeding.

¶ 4                                    II. BACKGROUND

¶ 5       Defendant and codefendant, Donald Haywood, were charged with first degree murder, armed robbery, vehicular invasion, and burglary in the July 5, 2003, death of Ruby Lasecki.

¶ 6                              A. Codefendant's Proceedings

¶ 7       Following a jury trial, codefendant was convicted of first degree murder on an accountability basis and sentenced to 55 years' imprisonment. As this court has stated, the:

> "evidence at [co]defendant's trial established, in part through [co]defendant's inculpatory statement, that [co]defendant agreed to act as a 'look out' for his brother [defendant] during the robbery of a cab driver in July 2003. [Cod]efendant hid a gun, given to him by [defendant], in the waistband of his pants. The two men were then picked up by the victim who drove them to a relative's home. Later, en route to another location, [defendant] gave [co]defendant a signal, [co]defendant handed him the gun, and [defendant] instructed the victim to drive to a vacant lot. After [defendant] took the victim's valuables, he told [co]defendant to shoot the victim. [Cod]efendant refused. Despite the victim's repeated pleas for mercy, [defendant] took the gun from [co]defendant and fatally shot her." *People v. Haywood*, 2012 IL App (1st) 111554-U, ¶ 3.

This court affirmed that judgment on direct appeal. *People v. Haywood*, No. 1-05-4075 (2008) (unpublished order under Illinois Supreme Court Rule 23). We also affirmed the dismissal of codefendant's 2009 postconviction petition alleging ineffective assistance of counsel for not contending on direct appeal that his sentence was excessive. *Haywood*, 2012 IL App (1st) 111554-U, ¶ 2. We found that the trial court did not abuse its discretion in sentencing codefendant to 55 years' imprisonment on a sentencing range of 20 to 60 years. *Id.* ¶¶ 14-16.

> "Although the record indicates the [co]defendant was 17 years old at the time of the offense, lacked parental guidance, and did not have a criminal record, he points to

nothing in the record to indicate that the trial court did not take these factors into consideration when determining his sentence." *Id.* ¶ 17.

¶ 8    This court then vacated a 2014 denial of leave to file a successive postconviction petition and remanded for further postconviction proceedings challenging codefendant's sentence as unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016). *People v. Haywood*, 2016 IL App (1st) 142833-U, ¶¶ 2, 25, 34. Codefendant was 17 at the time of his offense (*id.* ¶ 19) and received a *de facto* life sentence (*id.* ¶ 37) but "although the trial court considered [codefendant's] age and his personal history, the record does not indicate that the court considered the corresponding characteristics of his youth as outlined in *Miller* and *Montgomery*, or their effect on his conduct." *Id.* ¶ 40.

¶ 9    The record does not indicate the disposition of codefendant's sentence on remand.

¶ 10                                B. Defendant's Original Proceedings

¶ 11    While defendant awaited trial, the court ordered his forensic psychological evaluation, and in November 2003, a court psychologist found him fit to stand trial and sane at the time of the offense. The psychologist found defendant "somewhat slow cognitively, [but] he is clearly exaggerating his deficits," including malingering as shown by his failure of a psychological test for assessing malingering, "tend[ing] to 'play dumb' " until confronted, and being able to recite, accurately paraphrase, and apply the *Miranda* warnings. He was "not exhibiting any symptoms consistent with a major mental illness" but demonstrated behavioral issues including making "inappropriate sexual comments to female staff members"; lying; making threats towards the judge, trial counsel, and jail personnel; and trying to steal the examining psychologist's pens.

¶ 12    In 2005, the trial court found defendant in contempt of court and ordered a presentencing investigation. The August 2005 presentencing investigation report (PSI) indicated that defendant was born in February 1983. He had a juvenile adjudication in 1998 for possession of a controlled substance, theft, battery, and attempted robbery for which he received probation and, in 1999, for possession of a controlled substance for which his probation was revoked. He had a prior criminal conviction in 2005 for aggravated battery of a peace officer for which he received five years' imprisonment. In addition to the instant case and the contempt case, he was at that time facing two cases alleging aggravated battery of a peace officer and one alleging attempted murder.

¶ 13    The PSI also indicated that defendant was raised by both his parents until his father's death when defendant was 11 years old, after which his mother raised him. He suffered no abuse during his childhood but had a limited relationship with his mother and siblings. He had resided with his girlfriend of six years and had three young children. He attended school through the eighth grade, admitted never being employed, denied any mental health issues, acknowledged extensive drug and alcohol abuse, and admitted being a gang member of some leadership rank.

¶ 14    In June 2006, following a plea conference requested by defendant personally, defendant pled guilty to first degree murder in the instant case, with all other charges in this case and his other pending cases nol-prossed, and received 50 years' imprisonment. In the guilty plea proceedings, defendant was admonished that he could receive up to 60 years' imprisonment with 3 years of mandatory supervised release. The court recited that, in the plea conference, it heard about the motions in both defendant's and codefendant's cases and the evidence in codefendant's trial. Defendant waived a PSI after the court admonished him that it would

contain "your family background, work background, commitment to the community, your educational status, the facts in this case, your criminal background, and things of that nature." The parties acknowledged that there was an earlier PSI but agreed it would be "stale." The court allowed the defense to present argument in mitigation, and counsel argued that defendant was 23 years old, was reported to have an intelligence quotient below 70, attended school into the tenth grade, and had three children. Defendant elected not to address the court personally. The court sentenced defendant to 50 years' imprisonment for first degree murder, and the State nol-prossed all other counts in this case, defendant's "independent felony charges," and "all direct and indirect cases pending against" him.

¶ 15    Later in June 2006, defendant filed a *pro se* motion to withdraw his guilty plea, alleging ineffective assistance of trial counsel. The court denied the motion, but on appeal, this court vacated that denial and remanded for the appointment of new counsel and further proceedings. *People v. Haywood*, No. 1-07-0179 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 16    On remand, new counsel was appointed for defendant and amended and supplemented his plea withdrawal motion. An evidentiary hearing was held, and in September 2013, the trial court denied the motion. In part, the court noted that codefendant was convicted in a jury trial and found that there "was actually more evidence against [defendant] than [codefendant] and he was the more culpable offender" so that defendant was likely to have been convicted had he gone to trial.

¶ 17    On appeal, defendant contended in relevant part that he was entitled to a new sentencing hearing because the trial court sentenced him without a PSI or a finding on his criminal history as required by statute. 730 ILCS 5/5-3-1 (West 2018). We affirmed, noting that both parties waived a PSI and that a defendant cannot receive a new sentencing hearing on a negotiated guilty plea but must move to withdraw his plea. *Haywood*, 2016 IL App (1st) 133201, ¶ 41. We found, for reasons not relevant here, that defendant's withdrawal motion was properly denied. *Id.*

¶ 18                                C. Postconviction Proceedings

¶ 19    Defendant's December 2018 *pro se* postconviction petition claimed in relevant part that he was entitled to a new sentencing hearing because it was fundamentally unfair for him to receive a more severe sentence on his guilty plea than codefendant "who was equally culpable for the offense" and went to trial and because codefendant received a "significantly reduced sentence" under *Montgomery* because he was 17 at the time of the offense but defendant was "barely 20 years old when the alleged offense was committed" and had "no prior felony convictions." Defendant argued that the "evolving standards of decency" referenced in *Montgomery* and related cases meant that he "at age 20, is more similar to juveniles than mature adults." Defendant also claimed that direct appeal counsel was ineffective for not raising such a claim.

¶ 20    The circuit court summarily dismissed the petition in March 2019. It found in relevant part that defendant's sentencing treatment relative to codefendant was not unfair because (1) *Miller* and related cases governing the sentencing of minors, as codefendant was at the time of the offense, do not apply to the sentencing of adults such as defendant and (2) defendant was more culpable than codefendant because defendant planned the robbery and actually committed the shooting. Regarding the latter, the court noted that defendant had averred in support of one of codefendant's postconviction petitions that codefendant had no role in the crime. See

- 4 -

*Haywood*, 2016 IL App (1st) 142833-U, ¶ 24. This appeal timely followed.

¶ 21                                                              III. ANALYSIS

¶ 22      On appeal, defendant contends that his postconviction petition should not have been summarily dismissed because he has an at least arguably meritorious claim that his 50-year prison sentence is unconstitutional as he was 20 at the time of his offense and the trial court imposed a *de facto* life sentence without due consideration of his youth and its attendant characteristics in mitigation. The State responds that defendant waived his claim by pleading guilty, forfeited his claim by not raising it in his petition, and substantively is not entitled to relief because he was an adult who received a discretionary sentence.

¶ 23      A postconviction petition commences a collateral proceeding in which a defendant challenges his or her conviction or sentence for constitutional violations. *People v. Johnson*, 2021 IL 125738, ¶¶ 22-23. When a petition is summarily dismissed at the first stage of proceedings, we review whether it was frivolous or patently without merit. *Id.* ¶ 24. We affirm a summary dismissal if the petition has no arguable basis in law or in fact. *Id.* ¶ 26. All well-pled factual allegations are accepted as true and liberally construed at this stage unless refuted by the record. *Id.* ¶ 25. "The first stage of postconviction proceedings presents a 'low threshold,' requiring only that the petitioner plead sufficient facts to assert an arguably constitutional claim." *Id.* Our review of a summary dismissal is *de novo*. *Id.* ¶ 28.

¶ 24                                              A. *Miller* and Its Progeny

¶ 25      In *Miller*, the United States Supreme Court held that a sentence of natural life imprisonment or life without parole imposed mandatorily upon a person who was a minor at the time of his or her homicide offense violates the eighth amendment because mitigating factors relating to youth could not be considered in imposing the sentence. *Miller*, 567 U.S. at 489. In *People v. Holman*, 2017 IL 120655, ¶ 40, our supreme court held that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." In *People v. Buffer*, 2019 IL 122327, ¶¶ 30-41, our supreme court determined that a prison sentence longer than 40 years is a *de facto* life sentence. The *Buffer* "defendant committed an offense, at age 16, that subjected him to a legislatively mandated minimum sentence of 45 years and for which he received a sentence of 50 years. Because defendant's sentence was greater than 40 years, we conclude that defendant received a *de facto* life sentence." *Id.* ¶ 42.

¶ 26      When a defendant who was a minor at the time of his offenses receives a life sentence, including a *de facto* life sentence under *Buffer*, a reviewing court must determine whether the trial court "failed to consider defendant's youth and its attendant characteristics in imposing that sentence." *Id.* Our supreme court has held that *Miller* mandates that a trial court consider the defendant's youth and related characteristics as mitigating circumstances before imposing a life sentence. *Holman*, 2017 IL 120655, ¶ 37 (citing *Miller*, 567 U.S. at 483, 489). A minor defendant "may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id.* ¶ 46. While an express finding of incorrigibility is not required, "a trial court must consider some variant of the *Miller* factors before imposing a life sentence without the possibility of parole." *Id.* ¶ 43. Those factors include:

"(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id.* ¶ 46 (citing *Miller*, 567 U.S. at 477-78).

Our inquiry into the *Miller* factors is strictly retrospective: "the only evidence that matters is evidence of the defendant's youth and its attendant characteristics at the time of sentencing. Whether such evidence exists depends upon the state of the record in each case." *Id.* ¶ 47.

¶ 27                                    B. *Harris* and Young Adults

¶ 28       In *People v. Harris*, 2018 IL 121932, ¶ 53, our supreme court rejected a contention "that the eighth amendment protection for juveniles recognized in *Miller* should be extended to all young adults under the age of 21." The *Harris* court noted that the United States "Supreme Court has never extended its reasoning to young adults age 18 or over. Rather, the Supreme Court defined juveniles as individuals under the age of 18." *Id.* ¶ 56. Noting that various courts, including this court, had rejected the aforesaid contention, the *Harris* court concluded:

> "We agree with those decisions and our appellate court that, for sentencing purposes, the age of 18 marks the present line between juveniles and adults. As an 18-year-old, defendant falls on the adult side of that line. Accordingly, defendant's facial challenge to his aggregate sentence under the eighth amendment necessarily fails." *Id.* ¶ 61.

¶ 29       The *Harris* court refrained from addressing a young adult's proportionate penalties challenge—that his "sentence is so wholly disproportionate to his offenses that it shocks the moral sense of the community" (*id.* ¶ 35)—finding that such a "claim is an as-applied challenge. Defendant contends that, as applied to his specific circumstances, the sentencing statutes resulting in a mandatory aggregate sentence of 76 years' imprisonment violate the Illinois Constitution." *Id.* ¶ 37. An as-applied challenge requires a showing that a statute is unconstitutional as applied to the defendant's specific circumstances, while a facial challenge requires that the defendant establish the statute to be unconstitutional under any possible set of facts. *Id.* ¶ 52. However, as the *Harris* defendant raised his claim on direct appeal, there was no evidentiary hearing or other circuit court record suitable for an as-applied proportionate penalties claim. *Id.* ¶ 40. Noting that *Holman* provided for an inquiry into a defendant's sentencing, *Harris* distinguished *Holman*, where:

> "[t]he critical determinations were purely legal issues: deciding whether *Miller* also applied to discretionary life sentences for juveniles and defining the *Miller* factors to be considered in sentencing. [Citation.] The only other issue was determining from the 'cold record' whether the trial court adequately considered the *Miller* factors at the original sentencing hearing. [Citation.] Thus, the evidentiary record was sufficient to address the issues raised in *Holman*.
>
> In contrast, defendant in this case was 18 years old at the time of his offenses. Because defendant was an adult, *Miller* does not apply directly to his circumstances. The record must be developed sufficiently to address defendant's claim that *Miller* applies to his particular circumstances." *Id.* ¶¶ 44-45.

The *Harris* court did not remand for an evidentiary hearing because the defendant's as-applied proportionate penalties claim could be raised in a collateral proceeding such as a postconviction petition where facts not on the existing record are entered into evidence. *Id.* ¶ 48.

¶ 30    This court has found reversible error in the dismissal of a postconviction petition raising an as-applied proportionate penalties claim to consecutive prison sentences of life and 60 years by a defendant who was 19 at the time of his offense. *People v. House*, 2019 IL App (1st) 110580-B, ¶¶ 1, 3-4, 17, 23, *appeal allowed*, No. 125124 (Ill. Jan. 29, 2020).

> "While defendant was not a juvenile at the time of the offense, his young age of 19 is relevant under the circumstances of this case. As in *Leon Miller*, defendant's sentence involved the convergence of the accountability statute and the mandatory natural life sentence. We acknowledge that the offender in *Leon Miller* was 15, never handled a firearm, and had less than a minute to consider the implications of his participation. In the present case, the State's evidence at trial established that defendant was not present at the scene of the murder but merely acted as a lookout near the railroad tracks. There was no evidence that defendant helped to plan the commission but instead took orders from higher ranking [gang] members. While defendant had a greater involvement in the commission of the offenses than the defendant in *Leon Miller*, after considering the evidence and defendant's relevant culpability, we question the propriety of a mandatory natural life sentence for a 19-year-old defendant convicted under a theory of accountability. Although defendant acted as a lookout during the commission of the crime and was not the actual shooter, he received a mandatory natural life sentence, the same sentence applicable to the person who pulled the trigger." *Id.* ¶ 46 (discussing *People v. Miller*, 202 Ill. 2d 328 (2002) (*Leon Miller*)).

¶ 31    In a case where a defendant who was 18 at the time of his offenses challenged his life sentence upon a negotiated guilty plea (*People v. Daniels*, 2020 IL App (1st) 171738, ¶¶ 1-2), this court has stated that "it is premature at this juncture to conclude that the *only* way a defendant can establish cause and prejudice for the filing of a successive petition asserting an as-applied, youth-based sentencing claim is by demonstrating that the facts of his or her case align with those in *House*." (Emphasis in original.) *Id.* ¶ 31. This court remarked that the degree of participation in the offense is a relevant consideration but should not by itself be dispositive. *Id.* ¶ 32. "In *Harris*, our supreme court clearly envisioned an evidence-based factual inquiry ***." *Id.* ¶ 31. The *Daniels* defendant showed cause for his petition to proceed because the cases he relied upon for his claim did not exist when he pled and showed prejudice as he "directed this court's attention to at least some contemporaneous documentation regarding his mental health and personal characteristics that he might use to support such a claim." *Id.* ¶ 34.

¶ 32    This court has affirmed the denial of leave to file a *pro se* successive postconviction petition by a defendant who was 18 at the time of his offense, whose trial, direct appeal, and initial postconviction petition preceded *Miller* and whose petition challenged his 100-year sentence as unconstitutional. *People v. Evans*, 2021 IL App (1st) 172809, ¶¶ 1-9. "Young adult offenders are not *entitled* to the presumption that the tenets of *Miller* apply to them pursuant to the proportionate penalties clause. [Citation.] Indeed, they must *establish a record* to support their argument ***." (Emphases in original.) *Id.* ¶ 19.

> "In order for a young adult offender to receive sentencing protections pursuant to the proportionate penalties clause of the Illinois Constitution, which would be the

appropriate path of relief for the defendant in this case, he must plead and ultimately prove that his *specific and individual characteristics* require the application of *Miller*. [Citation.] Although at the pleading stage the defendant is not required to prove anything, he still needs to plead *some facts* justifying further proceedings." (Emphases in original.) *Id.*

However, "other than alleging that he was 18 years old when he committed his offense and was sentenced to 100 years' imprisonment, the defendant's petition failed to set forth *any* individual characteristics that would require the trial court to apply the sentencing protections set forth in *Miller*." (Emphasis in original.) *Id.* ¶ 20.

"Although, the law has undoubtedly continued to trend in the direction of increased protections for young adult offenders, with postconviction proceedings being the proper vehicle for them to seek such protections, they must still plead *specific and individual characteristics* as related to them. This is the only way to establish that they are entitled to the protections provided by *Miller* and its progeny as interpreted by the Illinois Supreme Court. Having failed to allege such facts showing that the tenets of *Miller* should apply to his particular circumstances, the defendant's petition does not support an as-applied challenge to his sentence under the proportionate penalties clause of the Illinois Constitution." (Emphasis in original.) *Id.* ¶ 21.

¶ 33 This court has also affirmed the denial of leave to file a successive petition in *People v. White*, 2020 IL App (5th) 170345, ¶ 28 (the defendant, 20 years old as of the offense, "was not a teenager on the cusp between a juvenile and adult who was minimally culpable" as "he developed an intricate plan for the murders, executed those plans, and elicited the aid of his younger brother in doing so"), and *People v. Moore*, 2020 IL App (4th) 190528, ¶ 40 ("other than defendant's general assertion a 19-year-old's brain is more similar to a 17-year-old adolescent's brain rather than a fully mature adult's and noting the present offense being his first adult conviction, defendant's motion failed to provide any evidence to indicate how his own immaturity or individual circumstances would provide a compelling reason to allow" a successive petition).

¶ 34 Conversely, this court has reversed the summary dismissal of a postconviction petition raising a young adult proportionate penalties *Harris* claim where the petition provided "facts that can be corroborated, are objective in nature, and bear directly on the Supreme Court's observation in *Miller* that a hallmark of youth is the lack of a fully formed character—traits that are not fixed and a corresponding capacity for meaningful rehabilitation." *People v. Zumot*, 2021 IL App (1st) 191743, ¶ 31. Quoting a paragraph in the petition where the defendant listed in detail his rehabilitative efforts in prison and expressly connected "his own particular circumstances and studies showing that young adults are more like juveniles than fully mature adults," this court found that "Zumot drew exactly that connection in [ ]his paragraph from his petition." *Id.*

¶ 35                                                           C. Guilty Pleas

¶ 36 It is axiomatic that entering a voluntary, knowing guilty plea waives a defendant's rights to a jury trial and to proof beyond a reasonable doubt. *People v. Jackson*, 199 Ill. 2d 286, 301 (2002). Conversely, challenges to the trial court's power to impose a particular sentence may be raised on appeal from a guilty plea. *Id.* at 300. The *Jackson* defendant's challenge to her guilty plea was that her extended-term sentence violated *Apprendi v. New Jersey*, 530 U.S. 466

(2000), which held that any factual determination (other than prior convictions) resulting in an extended sentence must be proven to a jury beyond a reasonable doubt. *Jackson*, 199 Ill. 2d at 292-93, 295-96. However, having waived her right to a jury trial with her plea, the

> "defendant cannot characterize her challenge as one which goes to the trial court's authority to impose the sentence in question, and the sentencing scheme pursuant to which her sentence was imposed is not facially unconstitutional. Accordingly, she is left with what has been the true nature of her challenge all along—that the statutory scheme was unconstitutional as applied to her ***." *Id.* at 301.

In *People v. Townsell*, 209 Ill. 2d 543, 548 (2004), our supreme court followed *Jackson* in holding that this court erred in applying a plain error analysis to consider an *Apprendi*-based sentencing challenge to a guilty plea. The supreme court "meant precisely what we said in *Jackson*: '*Apprendi*-based sentencing objections cannot be heard on appeal from a guilty plea.' " *Id.* (quoting *Jackson*, 199 Ill. 2d at 296).

¶ 37    In *People v. Sophanavong*, 2020 IL 124337, ¶¶ 2, 5-11, a defendant convicted on a negotiated guilty plea contended that the trial court failed to strictly comply with the requirements for forgoing a PSI. Our supreme court reiterated " 'that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional ones.' " *Id.* ¶ 33 (quoting *Townsell*, 209 Ill. 2d at 545). It found the claim to have been waived by the guilty plea.

> "To grant relief in this case would give defendant a second bite at the apple, well beyond the applicable time constraints of Rule 604(d), in his quest for a new hearing on his sentence, one that he voluntarily agreed to. Given that he waived all nonjurisdictional errors by pleading guilty, defendant should not be rewarded after standing silent all these years." *Id.*

¶ 38    This court has distinguished *Jackson* and *Townsell* to consider a successive postconviction petition where the defendant committed his offense as a minor and was claiming that his aggregate 110-year sentence upon a negotiated guilty plea was an improper *de facto* life sentence. *People v. Johnson*, 2021 IL App (3d) 180357, ¶¶ 1, 3.

> "The defendant's petition alleged that the *de facto* life sentence he received as part of his fully negotiated guilty plea is unconstitutional under the eighth amendment of the United States Constitution [citation]. Specifically, the defendant claims that the trial court failed to consider his youth and its attendant circumstances prior to accepting his plea and imposing the agreed-upon sentence, based on the United States Supreme Court's decision in *Miller*, [citation], and its progeny." *Id.* ¶ 13.

The State argued that a guilty plea waives all constitutional claims, citing *Jackson* and *Townsell* (*id.* ¶ 17), but this court found that "*Jackson* and *Townsell* are not applicable here. *Apprendi* concerns the State's requirement to prove an element of the crime, which a defendant explicitly waives when pleading guilty," while *Miller* "announced a new substantive rule of constitutional law." (Emphasis omitted.) *Id.* ¶ 18. Because the *Johnson* defendant pled guilty before *Miller* was decided, he "could not have voluntarily relinquished a right that was not available to him at the time that he plead guilty." *Id.* ¶ 20.

¶ 39    This court similarly reversed the summary dismissal of a postconviction petition by a defendant who was a minor at the time of his offense claiming that his 35-year prison sentence was based on a misapprehension of the sentencing range as affected by *Miller* and its progeny.

*People v. Robinson*, 2021 IL App (1st) 181653, ¶¶ 1, 3-6. Citing *Sophanavong*, the State argued that the defendant's negotiated plea had forfeited such a claim, but this court found that "Robinson's rights under the eighth amendment in this context were not known at the time he pleaded guilty; therefore, he could not have voluntarily relinquished them." *Id.* ¶ 30.

¶ 40        Moreover, this court has construed *Jackson* and *Townsell* narrowly to find no waiver where a defendant who was 18 at the time of his offenses challenged his life sentence upon a negotiated guilty plea. *Daniels*, 2020 IL App (1st) 171738, ¶¶ 16-19.

> "Daniels did not and could not have known at the time of his guilty plea that he could argue his natural-life sentence—a sentence he submitted to in order to avoid execution—was constitutionally disproportionate as applied to him. Our supreme court would not recognize the potential viability of youth-based claims made by young-adult offenders for another 20 years." *Id.* ¶ 18.

¶ 41                                                    D. This Case

¶ 42        Here, as a threshold matter, we find that defendant's *pro se* petition, construed liberally, raised a claim of the kind recognized in *Harris*, whereby a defendant, who was a young adult at the time of his offense, claims that his sentence was a disproportionate penalty in light of *Miller* and its progeny. Defendant's reference to his age of "barely 20 years" contrasted with "mature adults," and his evocation of the evolving standards of decency arising from *Montgomery* and its progeny, support that he was making a *Harris* young adult proportionate penalties claim. As another threshold matter, we find that we need not address whether defendant's guilty plea waived such a claim due to our disposition stated below.

¶ 43        We find that defendant's petition did not satisfy the requirement of *Harris* that a young adult defendant bears the burden of demonstrating that his particular circumstances fall under *Miller*, rather than presumptively falling under *Miller* as codefendant did because he was a minor at the time of the offense. Defendant claimed in his petition that his 50-year sentence was fundamentally unfair as compared to codefendant, who was sentenced to 55 years but whose case this court remanded for further proceedings under *Miller* and *Montgomery*. He supported this claim with only two factual allegations beyond the background facts of his age, codefendant's age, and the remand of codefendant's case: defendant had no prior felony convictions, and codefendant was equally culpable in the murder of Lasecki. However, the record in this case and the prior decisions of this court in the cases of defendant and codefendant amply refute both allegations. In summarily dismissing defendant's petition, the circuit court expressly referenced the fact that defendant and codefendant were not equally culpable. While a defendant need only present the gist of a meritorious claim in a *pro se* petition to survive summary dismissal, with sufficient facts to assert an arguable claim (*Johnson*, 2021 IL 125738, ¶¶ 25-26), defendant presented *no* unrefuted factual allegations in support of his *Harris* claim. This case is therefore distinguishable from *Zumot*, where summary judgment was inappropriate because the defendant provided factual allegations in support of his *Harris* claim. We find no error in the summary dismissal of defendant's petition.

¶ 44                                   IV. CONCLUSION

¶ 45          Accordingly, the judgment of the circuit court is affirmed.

¶ 46          Affirmed.