2016 IL App (1st) 152425
No. 1-15-2425
Opinion filed June 30, 2016

FIFTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 95 CR 24818 |
| ANTHONY D. LEE, SR., | ) ) | The Honorable Michele M. Pittman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Anthony Lee was convicted after a bench trial of five counts of aggravated criminal sexual assault and one count of aggravated kidnapping, and sentenced to a total of 100 years in the Illinois Department of Corrections

(IDOC). Defendant's convictions and sentences were affirmed on direct appeal. *People v. Lee*, No. 1-96-3069 (1998) (unpublished order under Supreme Court Rule 23).

¶ 2     On this postconviction appeal, defendant claims that the trial court erred in dismissing his successive petition at the second stage, because he made a substantial showing of ineffective assistance of trial counsel. Defendant included supporting affidavits from five affiants with his petition, and he claims that his counsel was ineffective for failing to call these individuals at trial.

¶ 3     Defendant's postconviction proceedings have been the subject of two separate supervisory orders from the Illinois Supreme Court directing this court to vacate our prior orders affirming dismissal and to reconsider defendant's petition and supporting affidavits. Thus, we have quoted below the supporting affidavits in full. However, even after considering carefully both our supreme court's orders and the petition and supporting affidavits, we find that we have no choice but to affirm this dismissal.

¶ 4                                    BACKGROUND

¶ 5     When we affirmed defendant's convictions and sentences on direct appeal, we set forth the underlying facts of the case. Thus we will repeat here only what is necessary to understand the issues on this appeal.

¶ 6        At trial, the victim, L.M., testified that on April 15, 1995, at around 1 a.m. she was walking on State Street in Calumet City to her sister's home, when two men in a vehicle pulled up, grabbed her and forced her into their vehicle. They then drove to Indiana, where defendant entered either a "liquor store or lounge," while codefendant, Burlmon Manley, remained in the vehicle and touched the victim against her will, specifically, touching her breast and vaginal area through her clothing and kissing her face and neck. At some point, codefendant told the victim where he worked and that he had "just left a club in Hammond." After defendant returned to the vehicle, they drove to an unknown location where defendant ripped off the victim's clothing, struck her head and face repeatedly with his fist and forced her to perform oral sex on codefendant. The victim was crying hysterically, and defendant became angry and instructed codefendant to "get the nine" from the vehicle's trunk. Codefendant returned with a gun, gave the gun to defendant, and then drove to another location. Defendant held the gun to the victim's head while he forced her to have vaginal intercourse and to perform oral sex on him. When the victim realized that defendant had released his grip on the gun, she struggled with defendant and managed to escape from the vehicle. She ran to a nearby house and defendant drove away.

¶ 7        Teresa Baragas testified that at 3 a.m., she was awakened by the victim banging on her door. Baragas and her aunt opened the door to find the victim who was naked, with black eyes and a "marked up and scarred" face, screaming that she had been raped. They called the police and the victim was transported to the hospital in an ambulance.

¶ 8        Several months later, the victim identified defendant in a lineup.

¶ 9        Defendant testified that the victim voluntarily entered his vehicle, that she waited while he and codefendant entered a liquor store or lounge together, and that the three of them drank alcohol and smoked marijuana together. Defendant cussed at her after she stamped out a cigarette on the floor of his vehicle. She then pushed his arm, causing him to spill his drink, and he struck her. After the two of them exchanged blows, he exited the vehicle and sat on the curb, drinking beer, while the victim and codefendant remained in the vehicle. After close to an hour, defendant returned to the vehicle and drove to another location, while the victim and codefendant had sex in the backseat. When they stopped, codefendant exited the vehicle; and the victim, who was completely naked, hit defendant in the eye and then jumped out of the vehicle, stating "you bastards are going to pay for this." At trial, defendant denied having any sex or

any sexual contact with the victim,[1] and he denied that either he or codefendant had a gun that night.

¶ 10      At the end of the bench trial, the trial court stated that it found the victim "very credible" and found defendant's testimony "incredible." The trial court further stated that the photograph of the victim's injures "shows that this was not a consensual act." The trial court found defendant guilty of five counts of aggravated criminal sexual assault and one count of kidnapping and, after considering factors in aggravation and mitigation, sentenced defendant to a total of 100 years in IDOC. This total included an extended term sentence of 60 years on three counts of aggravated criminal sexual assault, a consecutive extended term sentence of 40 years on the other two counts of aggravated criminal sexual assault under an accountability theory for codefendant's sex with the victim, and a concurrent sentence of 15 years for aggravated kidnapping. Defendant did not raise an ineffective assistance claim on direct appeal and his convictions and sentences were affirmed on direct appeal. *People v. Lee*, No. 1-96-3069 (1998) (unpublished order under Supreme Court Rule 23).

---

[1]Giving defendant every benefit of the doubt on this appeal, we do not consider defendant's pretrial statement which defendant has consistently denied making. In the statement, he stated that he had consensual oral sex with the victim.

¶ 11　　　　On December 23 1998, after this court's decision on direct appeal and our supreme court's decision to deny leave to file an appeal, defendant filed a *pro se* postconviction petition, alleging, among other claims, that his trial counsel was ineffective for failing to interview or call eight witnesses after defendant had informed counsel about them. These witnesses included Brian and Gayland Massenberg; Charlene Parker; and Philip Elston. Defendant's 1998 petition included affidavits from these witnesses, and defendant alleged that they could have exonerated him at trial.

¶ 12　　　　The 1998 petition advanced to the second stage, and defendant's appointed counsel filed a supplemental petition on June 25, 2001. On June 10, 2002, the trial court granted the State's motion to dismiss on the ground that the petition was untimely. On March 5, 2004, we reversed and remanded, in order to permit counsel to comply with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). *People v. Lee*, No. 1-02-1707 (2004) (unpublished order under Supreme Court Rule 23). After the case was remanded, the trial court again dismissed it on March 30, 2007, "based on *res judicata* and untimeliness." On appeal, we affirmed the dismissal as untimely. *People v. Lee,* No. 1-07-0914 (2008) (unpublished order under Supreme Court Rule 23). On May 29, 2009, the Illinois Supreme Court issued a supervisory order that directed this court to vacate the portion of our 2008 order, which found the petition untimely, and to

review the trial court's dismissal based on *res judicata*. *People v. Lee*, No. 108250 (Ill. May 28, 2009) (supervisory order).

¶ 13     This court then withdrew our 2008 order, but we again affirmed the dismissal of defendant's petition, which defendant had originally filed in 1998. *People v. Lee*, No. 1-07-0914 (2009) (unpublished order under Supreme Court Rule 23). We observed that defendant had raised claims of ineffective assistance of trial counsel, and we found these claims forfeited because they related to information known to defendant before he filed his direct appeal, and thus these claims could and should have been raised at that time. *Lee*, No. 1-07-0914, slip order at *3. Defendant filed both a petition for rehearing and a petition for leave to appeal, which were both denied.

¶ 14     In June 2010, defendant filed a *pro se* motion for leave to file a successive postconviction petition, in which he alleged that trial counsel was ineffective for failing to interview or call as witnesses: Phillip Elston, Charlene Parker, and Brian and Gayland Massenburg. Defendant alleged that these witnesses would have testified that the victim entered his vehicle willingly and remained there voluntarily with him and codefendant. Defendant attached the same affidavits that he had originally attached to his 1998 petition, with the addition of a second affidavit from Philip Elston, in which Elston clarified that he had observed defendant on the date of the offense and that he was never

contacted by defendant's attorney, although he had written counsel concerning his willingness to testify.

¶ 15    Defendant claimed that he should be granted leave to file a successive petition, even though his ineffective assistance claim had been raised in his first petition. First, defendant argued that the initial postconviction proceedings were flawed because his claim failed to receive substantive review during that time, due to the allegedly erroneous determinations by the appellate and trial courts that the claim was procedurally barred. Second, defendant argued that his claim was not procedurally forfeited, because the affidavits supporting his claim were not part of the record on the direct appeal. On August 13, 2010, the trial court denied defendant leave to file his successive petition, on the ground that defendant failed to satisfy the cause and prejudice test.

¶ 16    On September 18, 2012, this court affirmed the trial court's order denying defendant leave to file a successive petition. This court found that, "even if we were to decide in defendant's favor as to cause, he has not shown prejudice" to justify the filing of a successive petition." *People v. Lee*, 2012 IL App (1st) 102592-U, ¶ 20. We explained that, "[e]ven if these four witnesses had testified at trial consistent with their affidavits, there is no reasonable probability that the outcome of the proceeding would have been different." *Lee*, 2012 IL App (1st) 102592-U, ¶ 25.

¶ 17     Reviewing the evidence at trial, we stated that, at trial, the victim "testified that defendant and codefendant abducted her off the street, drove her to various locations, sexually assaulted her, threatened her with a gun, and beat her before she was able to escape and run to a nearby house for help. Teresa Baragas, a disinterested witness, testified that about 3 a.m. on the morning in question, she woke to banging on her front door. She answered the door to L.M., who was naked, had black eyes and other marks on her face, and was screaming that she had been raped." *Lee*, 2012 IL App (1st) 102592-U, ¶ 25.

¶ 18     After reviewing the evidence at trial, we reviewed the affidavits. With respect to the Massenburg brothers' affidavits, we stated that they "reference the date following the date in question, and moreover, [they] simply relate that they saw two men in a car matching the description of defendant's car talking to a white woman, who then 'got into the rear of the car.' Even if the affidavits referenced the correct date, the brothers' proposed testimony does not establish that the men in the car were defendant and codefendant, that the woman who 'got into' the car was L.M., or that L.M. was not forced into defendant's car that night." *Lee*, 2012 IL App (1st) 102592-U, ¶ 26.

¶ 19     With respect to Parker, we observed that she "averred in her affidavit that between 1:00 and 1:30 a.m. on the date in question, she took a photograph of defendant, codefendant and a third man in a lounge in Hammond, Indiana."

*Lee*, 2012 IL App (1st) 102592-U, ¶ 7. We concluded that "Parker's proposed testimony is unhelpful to defendant, as the photograph she states is attached does not appear in the record. Additionally, L.M. testified that codefendant told her he had just left a club in Hammond. Therefore, Parker's proposed testimony could support L.M.'s version of events, as opposed to defendant's." *Lee*, 2012 IL App (1st) 102592-U, ¶ 26.

¶ 20    With respect to Ellston, we observed that "Ellston's affidavit relates to events that occurred around 3:30 or 4:00 a.m., a time period after Teresa Baragas placed L.M. at her front door, naked and beaten. Accordingly, his proposed testimony would not have helped defendant's cause." *Lee*, 2012 IL App (1st) 102592-U, ¶ 26.

¶ 21    Thus, we concluded that defendant failed to show that "he suffered prejudice from trial counsel's failure to call" these four witnesses at trial, and we affirmed the trial court's denial of defendant's motion for leave to file a successive petition. *Lee*, 2012 IL App (1st) 102592-U, ¶ 27.

¶ 22    On May 29, 2013,[2] the Illinois Supreme Court denied defendant's petition for leave to appeal. However, in the same order, our supreme court stated:

---

[2]The order stated that, "[o]n the twenty-ninth day of May 2013, the Supreme Court entered the following judgment," and the Clerk of the Supreme Court stated that: "I have hereunto subscribed my name and affixed the Seal of said Court, this third day of July, 2013."

"In the exercise of this Court's supervisory authority, the Appellate Court, First District, is directed to vacate its judgment in *People v. Lee*, case No. 1-10-2592 *** (09/18/12). The Appellate Court is directed to remand the matter to the circuit court with directions that the circuit court permit defendant to file a successive *pro se* petition for post-conviction relief alleging the ineffective assistance of trial counsel, at which point the circuit court may engage in first stage review. This court expresses no opinion regarding the ultimate merits of the claim or whether defendant can state the gist of a constitutional claim." *People v. Lee*, No. 115020 (Ill. May 29, 2013) (supervisory order).

¶ 23 On July 12, 2013, this court entered an order stating:

"Upon the Illinois Supreme Court's supervisory order of May 29, 2013, this court vacates its judgment in *People v. Lee*, No. 1-10-2592 (filed September 18, 2012), and remands the matter to the circuit court.

The circuit court is directed to permit petitioner to file a successive *pro se* petition for post-conviction relief alleging ineffective assistance of trial counsel, at which point the circuit court may engage in first stage review."

¶ 24 On November 22, 2013, the trial court granted defendant leave to file a successive postconviction petition; and on August 1, 2014, his counsel received

leave to file an amended petition, which was filed on September 26, 2014. The petition contained the following six affidavits from five different affiants, which we quote in full.

¶ 25    Brain Massenburg's affidavit, dated December 28, 1995, stated:

"I remember the incident on or about April 16, 1995, at approximately 12:30 A.M.- 1:00 A.M., my brother's car broke down on us three blocks from my brother Greg's house at [a street address] in Calumet City.

We were pushing the car on State Street, when two men in a blue Cadillac asked if we needed some help; we said no.

They turned the car around and started talking to a white woman and she then got into the rear of the car, and they drove off going east on State Street."

¶ 26    Gayland Massenburg's affidavit, also dated December 28, 1998, stated in full:

"I recall the incident that happened on or about April 16, 1995, at approximately 12:30 A.M.–1:00 A.M.; me (Gayland) and Brian were pushing my vehicle on State Street going to [a street address] in Calumet City.

Two men in a blue [C]adillac stopped to see if we needed help; we told them no.

They then stopped and talked to a white woman that was walking on east on State Street.

The lady got into the rear of the car and they drove off going east on State Street."

¶ 27    Charlene Parker's affidavit, dated December 12, 1995, stated in full:

"I was at Dad's Lounge and Package Goods in Hammond, Indiana on April 15, 1995 and that I took the photo attached to this affidavit on that night.

The attached picture show's [*sic*] Anthony Lee, Berlman Manley, and Keith Adams, I took this picture of the three of them around 1:00 a.m.–1:30 a.m. in the lounge part of Dad's Lounge.

I will testify in open court under oath that all three of these gentlemen were in Dad's Lounge at the same time on the night of April 15, 1995."

Although Parker's affidavit states that a photograph was attached, no photograph was attached to the exhibit in the amended petition.

¶ 28    Phillip Elston swore out two affidavits. His first affidavit, dated October 2, 1995, stated in full:

"I was driving pass [*sic*] Merrill Park when I notice Anthony Lee's car between 3:30-4:00 a.m.;

Anthony Lee was sitting on a curb, 3'-4' away from his car, drinking beer;

I noticed a man and a woman entering the rear door of Anthony Lee's car;

Anthony then walked up to my car with three (3) beers and got in;

I asked him what was going on, and he replied, 'His friend Jr. pulled this female.';[3]

I then asked Anthony to ride with me to get a pack of cigarettes, and we proceeded to a store;

When we returned to Anthony's car, Anthony got into his car and drove north, and I drove south;

I make this affidavit of my personal knowledge."

¶ 29 Elston's second affidavit, dated August 23, 2008, stated in full:

"That, on October 2, 1995, I prepared and signed a[n] affidavit concerning a[n] incident that I witnessed at Merrill Park on April 15/16, 1995. When I was preparing the affidavit I was in a rush to get the affidavit out and forgot to put the date of the incident on the affidavit. I put the 15/16, because of the time change and that it was after 12am [*sic*]

---

[3]This is the punctuation in the affidavit.

14

on the 15th which would have made it the 16th day of April because it was 3:30 to 4am [*sic*] in the morning.

Also copies of my affidavit was sent to Anthony Lee Sr. and his attorney [name] at [counsel's address], and I also wrote him a letter stating that I would not have a problem testifying on Mr. Lee's behalf. I was never contacted by attorney [name] after I sent him the affidavit & letter.

I hope that this second affidavit will clear up any concerns that may have arise[n] from my first affidavit and the fact that I forgot to put the date of the incident on that affidavit. If needed I am willingly to testify at any trial or hearing concerning the incident that Anthony Lee Sr., was involved in back on April 15/16, 1995.

I make this affidavit of my own personal knowledge."

¶ 30    Gail Pinkston's affidavit, dated October 2, 1995, stated in full:

"On August 4, 1995, I received and accepted a collect call from Burrell Manny,[4] who was in jail in Memphis Tenn.;

Burrell stated in that conversation to me about the incident that happened in April, 1995 regarding some white female;

---

[4]Codefendant's name is Burlmon Manley.

Burrell stated further that he had sex with that white female in the back seat of Anthony's car, and that Anthony was no where around during that sexual encounter with that white female;

Burrell made the statement to me, 'that if he (Burrell) goes down on this case that he would take Anthony down with him.'

I make this affidavit of my personal knowledge and conversation with Burrell Manny."

¶ 31    On January 9, 2015, the State filed a motion to dismiss, arguing that defendant was not entitled to a third-stage evidentiary hearing for several reasons including that he had failed to file a verification affidavit. In response, on March 6, 2015, defendant moved for leave to file a verification affidavit, which the trial court granted. Defendant's verification affidavit, dated January 28, 2015, stated that defendant verified that the statements and facts set forth in the amended successive petition were true and correct.

¶ 32    On June 12, 2015, the trial court heard argument from both sides. Although the Supreme Court's and appellate court's orders had stated that the matter was remanded for first-stage review, both attorneys during argument indicated that the matter was then under second-stage review and that the issue was whether the case would proceed to a third-stage evidentiary hearing. Similarly, at the conclusion of argument, the trial court stated that "we are at the

second stage." The trial court then continued the matter to permit the court "time to review everything."

¶ 33        The trial court then granted the State's motion to dismiss on August 7, 2015, and it is this decision that we are now asked to review.

¶ 34        The trial court stressed that it was reviewing defendant's ineffectiveness claim on the merits, stating: "I want the record to be clear that this issue is being decided on the merits." The trial court then concluded that there was no "reasonable probability that the result of the proceedings would have been different than the results of the proceedings that were had in this matter." As a result, the trial court found that defendant failed to show that he suffered any prejudice from the trial counsel's alleged failure to call these witnesses. Without a showing of prejudice, the trial court found that defendant could not succeed on his ineffectiveness claim.

¶ 35        In reaching this conclusion, the trial court reviewed the affidavits included with defendant's petition:

> "There were four witness affidavits that were submitted with regards to witnesses, plus one rather, who– Four in particular that defense counsel did not call at trial. The first two are Brian and Galin Massenberg. Their affidavits have been reviewed by this Court. They state in their affidavits, they indicate a date, following the date in

17

question which is April 16th of 1995. But more so regardless of the date, the Court finds in their affidavit[s] they never established who the men in the car, who they were, who they saw talking to as they put it a white woman who got into the rear of the car. The affidavits do not establish that it is the Defendant Mr. Lee or his co-defendant, or that the woman was in fact the victim in this case. I will initial her name L.M. Or their affidavits also don't establish that she was still not forced into their car.

The next affidavit is of Charlene Parker. I have reviewed her affidavit. She references being in Dad's Lounge in Hammond, Indiana at a particular time. The complainant, L.M., in this matter testified that the co-defendant told her that he had just left a club in Hammond. Attached to Charlene Parker's affidavit she mentions a photograph or a picture, and it is not attached to her affidavit.

The Court in reviewing the record [*sic*] clearly consent was the defense in this case. Looking at the time that she is stating that she saw the Defendant, or looking at the place that she is saying she saw the Defendant, it seems as if it's a[n] alibi that she is giving, saying he could not have been there. But again there is no picture attached or anything to show of who the people are in the photo that she is speaking of.

With regards to Phillip Elston, he submits two affiavit[s]; one October 2nd of 1995. He references no date referred in what he saw on the date in question. Thirteen years later, August 23rd of 2008, he then references that he saw the Defendant between 3:30 and 4:00 a.m. on April 15/16, 1995. He is correcting his prior affidavit that he indicates he was in a rush to sign back [in] October 2nd of 1995. And August 23rd of 2008, he indicates that he is correcting it, and he recalls it was April 15/16, 1995. And it's at 3:30 or 4:00 o'clock in the morning. He says he saw the Defendant at Merrill Park, or around Merill Park at this time. He indicates that he sent a copy of his affidavit to [trial counsel]. And he wrote him a letter stating that he would not have had a problem testifying on Mr. Lee's behalf. This time and of course looking at his affidavit, this is the time where it's after the incident in question and when the independent witness Teresa Baracus, places the victim at her front door, knocking on her door, indicating that she—At that time the witness indicated that she was naked and she could visually see that she had been beaten. This is after the incident that Mr. Elston is stating in his affidavit that he saw the Defendant. It's at 3:30 or 4:00 o'clock in the morning.

Gail Pinkston has submitted an affidavit as well. She indicated she had a conversation with Burell Manny. The co-defendant in this matter is

Burlmon, B-u-r-l-m-o-n, Manley, M-a-n-l-e-y. She indicates that this person told her that if he goes down on this case, that he would take Anthony down. [Defendant] has submitted this affidavit. The record shows that, the Defendant, Mr. Lee was arrested[,] I see[,] July 27th of 1995, and the co-defendant Mr. Manley was out to warrant at that time."

¶ 36 Although the record on appeal does not contain a written order entered by the trial court dismissing defendant's petition, the record does contains a "Criminal Disposition Sheet," dated August 7, 2015, which states "State's Motion to Dismiss Defendant's Post Conviction Petition—Granted[.] Petition Dismissed[.] Clerk to notify D[.] Off Call[.]" The record also contains a half-sheet entry for August 7, 2015, which states: "State's mtn to dismiss def's post conviction petition-granted, petition dismissed, clerk to notify def. Off call."

¶ 37 On August 27, 2015, defendant filed a notice of appeal, appealing the trial court's August 7, 2015, second-stage dismissal of his successive postconviction petition, and this appeal followed.

¶ 38 ANALYSIS

¶ 39 On this postconviction appeal, defendant claims that the trial court erred in dismissing his successive petition at the second stage, because he made a substantial showing of ineffective assistance of trial counsel. Defendant included supporting affidavits from five affiants with his petition, and he claims

that his counsel was ineffective for failing to call these individuals at trial. For the following reasons, we affirm.

¶ 40                    I. Stages of a Postconviction Petition

¶ 41        This appeal is taken pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)), which provides a statutory remedy for criminal defendants who claim their constitutional rights were violated at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act is not intended to be a substitute for a direct appeal; instead, it is a collateral proceeding which attacks a final judgment. *Edwards*, 2012 IL 111711, ¶ 21.

¶ 42        The Act provides for three stages of review by the trial court. *People v. Domagla*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition that is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2012); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 43        However, this appeal involves a successive petition and, for a successive petition to even be filed, the trial court must first determine whether the petition (1) states a colorable claim of actual innocence (*Edwards*, 2012 IL 111711, ¶ 28) or (2) establishes cause and prejudice (*People v. Smith*, 2014 IL 115946, ¶ 34). This standard is higher than the normal first-stage "frivolous or patently without merit" standard applied to initial petitions. *Edwards*, 2012 IL 111711, ¶¶ 25-29; *Smith*, 2014 IL 115946, ¶ 35 ("the cause-and-prejudice test for a

successive petition involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act").

¶ 44        Since a filed successive petition has already satisfied a higher standard, the first stage is rendered unnecessary and the successive petition is docketed directly for second-stage proceedings. See *People v. Saunders*, 2016 IL 118123, ¶¶ 25, 28 (with a successive petition, the initial issue before the trial court is whether it "should be docketed for second-stage proceedings"); *People v. Wrice*, 2012 IL 111860, ¶ 90 ("reversing the trial court's order denying defendant leave to file his second successive postconviction petition and remand[ing] to the trial court for *** second-stage postconviction proceedings"); *People v. Jackson*, 2015 IL App (3d) 130575, ¶ 14 ("When a defendant is granted leave to file a successive postconviction petition, the petition is effectively advanced to the second stage of postconviction proccedings."); *People v. Almodovar*, 2013 IL App (1st) 101476, ¶ 1 (reversing the trial court's denial of the defendant's motion for leave to file a successive petition and remanding for second-stage proceedings).

¶ 45        If the court permits a successive petition to be filed or does not dismiss an initial petition at the first stage, the petition then advances to the second stage, where counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4

(West 2012); *Domagala*, 2013 IL 113688, ¶ 33; *Wrice*, 2012 IL 111860, ¶ 90 (after reversing the trial court's denial of leave to file a successive petition, the supreme court remanded "for appointment of postconviction counsel and second-stage postconviction proceedings"). After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2012); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). In the case at bar, the petition was dismissed at the second stage.

¶ 46     "The second stage of postconviction review tests the legal sufficiency of the petition. Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation. In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Domagla*, 2013 IL 113688, ¶ 35.

¶ 47  Both the second stage and a motion for leave to file a successive petition require a review of "the petition and any accompanying documentation." *Edwards*, 197 Ill. 2d at 246 (second-stage review); *Edwards*, 2012 IL 11171, ¶ 24 (motion for leave to file a successive petition). For the second stage to not be superfluous for a successive petition, it must be that the "substantial showing" required at the second stage is greater than the "probability" required for a successive petition to receive leave for filing. *Smith*, 2014 IL 115946, ¶ 29 (expressing a desire not to "render the entire three-stage postconviction process superfluous").

¶ 48  If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court acts as factfinder determining witness credibility and the weight to be given particular testimony and evidence and resolving any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34. This third stage is the same for both initial and successive petitions. *Cf. Smith*, 2014 IL 115946, ¶ 29 ("The legislature clearly intended for further proceedings on successive postconviction petitions."). It is this third-stage evidentiary hearing, which defendant is seeking in the case at bar.

¶ 49                                II. Standard of Review

¶ 50        As we noted above, defendant's petition was dismissed at the second stage. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006) (second-stage dismissals are reviewed *de novo*). When our review is limited to documentary materials, as it is at the second stage, then our review is generally *de novo. Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007) ("Where the circuit court does not hear testimony and bases its decision on documentary evidence, the rationale underlying a deferential standard of review is inapplicable and review is *de novo*."); *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007) (where the trial court "did not conduct an evidentiary hearing" or "make any findings of fact," and "relied on the parties' oral argument and the record," "we review the court's ruling on this issue *de novo*").

¶ 51        Thus, we apply a *de novo* review to defendant's claim. *De novo* consideration means that we perform the same analysis that a trial judge would perform. *In re N.H.*, 2016 IL App (1st) 152504, ¶ 50 (citing *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)).

¶ 52                          III. Ineffective Assistance of Counsel

¶ 53        Defendant claims that the trial court erred in dismissing his successive petition at the second stage, because he made a substantial showing of ineffective assistance of trial counsel.

¶ 54 Every Illinois defendant has a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and under article I, section 8 of the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Domagala*, 2013 IL 113688, ¶ 36. Claims of ineffective assistance are judged against the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Domagala*, 2013 IL 113688, ¶ 36 (citing *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting *Strickland* for Illinois)). To prevail on a claim of ineffective assistance, a defendant must show both: (1) that counsel's performance was deficient; and (2) that this deficient performance prejudiced defendant. *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 687).

¶ 55 To establish the first prong, that counsel's performance was deficient, a defendant must show "that counsel's performance was objectively unreasonable under prevailing professional norms." *Domagala*, 2013 IL 113688, ¶ 36. To establish the second prong, that this deficient performance prejudiced the defendant, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 694). "A reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome"–or put another

way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair. *People v. Colon*, 225 Ill. 2d 125, 135 (2007); *People v. Evans*, 209 Ill. 2d 194, 220 (2004).

¶ 56    Although the *Strickland* test is a two-prong test, our analysis may proceed in any order. Since a defendant must satisfy both prongs of the *Strickland* test in order to prevail, a trial court may dismiss the claim if either prong is missing. *People v. Flores*, 153 Ill. 2d 264, 283 (1992). Thus, if a court finds that defendant was not prejudiced by the alleged error, it may dismiss on that basis alone without further analysis. *People v. Graham*, 206 Ill. 2d 465, 476 (2003); *People v. Albanese*, 104 Ill. 2d 504, 527 (1984).

¶ 57                        IV. No Prejudice

¶ 58    In the case at bar, we agree with the trial court, and find that there was no reasonable probability that, but for counsel's allegedly unprofessional errors, the result of the proceeding would have been different. See *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 694).

¶ 59    In the case at bar, there was no issue about identity. The dispute was about what exactly happened. These issues generated a credibility dispute between defendant and the victim, resulting in a "he said/she said" case. The victim's trial testimony was corroborated by: (1) trial testimony from Teresa Barags who described the victim's immediate outcry to total strangers, and the

27

victim's beaten and naked appearance; (2) photographs of the victim's injuries, which were inconsistent with consent; and (3) the victim's prior lineup identification of defendant. After listening to the testimony and reviewing the evidence at a bench trial, the trial court found the victim "very credible" and defendant "incredible."

¶ 60    On this appeal, defendant argues that his postconviction affidavits make a substantial showing that there was a reasonable probability that the outcome of his trial would have been different if these affiants had been called at trial. Like the court below, we cannot agree.

¶ 61    Even assuming that the affiants would testify at an evidentiary hearing and that they would testify to what is stated in their affidavits, we cannot find a reasonable probability that the result would have been different. We observe that a different panel of this court previously reached the same conclusion, as did the court below. *Lee*, 2012 IL App (1st) 102592-U, ¶ 25 ("Even if these four[5] witnesses had testified at trial consistent with their affidavits, there is no reasonable probability that the outcome of the proceedings would have been different."). However, we make our own independent assessment here, since our review is *de novo*. *Pendleton*, 223 Ill. 2d at 473 (second-stage dismissals are reviewed *de novo*).

_____

[5]Defendant has added the affidavit of Gail Pinkston, which now brings the number of affiants to five.

¶ 62    First, the Massenburg brothers' affidavits aver that they observed two men in a blue Cadillac on State Street in Calumet City between 12:30 and 1 a.m. on April 16, 1995; that these two men started "talking to a white woman"; that she entered the backseat of the Cadillac; and that they drove off. While the description of the vehicle matches defendant's vehicle, the Massenburgs' affidavits state that they made these observations on April 16, 1995, which is the day *after* the date of the offense. Even if we were to assume that they meant the correct offense date, and that they would testify in accord with their affidavits, and that they would be found to be completely credible, their affidavits do not identify the two men as defendant and codefendant or the woman as the victim. The Massenburgs do not indicate that they knew any of these three people; and they do not offer any physical description of either the two men or the woman, except for the fact that she was white. The Massenburgs also do not state whether the woman was coerced into the vehicle or whether they were at a vantage point where they could observe whether she was coerced into the vehicle.

¶ 63    Second, Charlene Parker's affidavit states that she was at a lounge and "package goods" store in Hammond, Indiana, on the date in question; that she took a photograph there "around 1:00 a.m.–1:30 a.m." of defendant, "Berlman Manley, and Keith Adams"; and that the photograph is attached. Even if were to

assume that "Berlman Manley" was codefendant, Burlmon Manley, the photograph is not attached, either in the original petition or the petition more recently supplemented by counsel. In addition, the victim testified that she first encountered defendant and codefendant around 1 a.m. and that codefendant informed her that he had "just left a club in Hammond." Thus, even if we were to assume that Parker would testify in accord with her affidavit and that she would be found to be completely credible, her proposed testimony does not necessarily contradict the victim's testimony.

¶ 64    Third, similar to Parker's affidavit, Phillip Elston's affidavits specifically identify defendant. While Elston's first affidavit did not identify the date in question, his second affidavit identified the date of his observations as the date of the offense. Thus, we will assume that Elston will testify that, on the date of the offense, at between 3:30 and 4 a.m., Elston observed defendant sitting on the curb, near defendant's vehicle, drinking beer; and that a man and a woman entered the backseat of defendant's vehicle; that defendant entered Elston's vehicle; that Elston and defendant drove to a store and back; and that defendant entered his own vehicle and drove away. Elston averred that, when he asked defendant "what was going on," defendant replied that: "His friend Jr. pulled this female."

¶ 65      We do not know what Elston meant by "pulled." It could mean "coerced." However, giving defendant the benefit of the doubt, we will assume for the purposes of our *de novo* review that "pulled" does not equal "coerced."

¶ 66      The main problem with Elston's affidavits is that his observations occurred after the offense concluded. The victim in this offense testified that she first encountered defendant at around 1 a.m., and Teresa Baragas testified that the victim appeared, naked and beaten, outside Baragas' door around 3 a.m. Thus, even if we were to assume that Elston would testify, and that he would testify in accord with his affidavit, and that he would be found to be completely credible, his observations of defendant between 3:30 and 4 a.m. occurred after the events at issue had already concluded.

¶ 67      Lastly, Gail Pinkston's affidavit states that on August 4, 1995, she received a telephone call from "Burrell Manny" who was in jail and who stated that in April 1995 "he had sex with that white female in the back seat" of defendant's vehicle, that defendant was "no where around," and that if he "goes down on this case that he would take [defendant] down with him." Even if we were to assume that "Burell Manny" was codefendant Burlmon Manley, and that Pinkston would testify in accord with her affidavit and that she would be found to be completely credible, her proposed testimony contradicts defendant's trial

testimony. Defendant testified at trial that he was driving his vehicle, while codefendant and the victim had sex in the backseat of it.

¶ 68    Thus, after carefully considering defendant's affidavits, which we quoted in full, and even assuming that all the affiants would testify in accord with their affidavits and that they would all be found to be completely credible by the factfinder, we still cannot find that defendant suffered prejudice from his trial counsel's alleged failure to call these affiants at trial. After considering defendant's petition fully on its merits, we cannot find a reasonable probability that, but for counsel's allegedly unprofessional errors, the result of the proceeding would have been different. See *Domagala*, 2013 IL 113688, ¶ 55. As a result, we have no choice but to affirm the trial court's dismissal.

¶ 69                              CONCLUSION

¶ 70    In conclusion, we find that that the trial court did not err in dismissing defendant's successive petition at the second stage, because his petition did not make a substantial showing of ineffective assistance of trial counsel. In reaching this conclusion, we are keenly aware that defendant's postconviction proceedings have been the subject of two separate supervisory orders from the Illinois Supreme Court directing us to vacate our prior orders affirming dismissal and to reconsider defendant's petition and supporting affidavits. However, we have carefully reviewed the supporting affidavits, which

defendant included with his petition and which we quoted in full in this opinion, and we find that we have no choice but to affirm.

¶ 71        Affirmed.