2021 IL App (3d) 180357

Opinion filed February 26, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0357 Circuit No. 94-CF-382 |
| PHILIP JOHNSON, | ) ) | Honorable Michael D. Risinger, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1     The defendant, Philip Johnson, appeals the second-stage dismissal of his successive postconviction petition. The defendant argues that his constitutional rights were violated where he received a *de facto* life sentence as a juvenile offender.

¶ 2                                              I. BACKGROUND

¶ 3     The defendant and his older sister, Angela S. Oakes, were charged by information with two counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 1994)) for killing their father, James T. Johnson, and their father's girlfriend, Frances M. Buck. The defendant was 16 years old at the

time; Oakes was 20 years old. The defendant entered into a negotiated plea agreement, pleading guilty to one count of first degree murder for killing Buck and one count of the lesser offense of second degree murder (*id.* § 9-2(a)(2)) for killing his father. In exchange for the plea, the State agreed to recommend a total sentence of 110 years' imprisonment, which included consecutive terms of 90 years for first degree murder and 20 years for second degree murder.

¶ 4     At the plea hearing, the State advised the court that, if the defendant proceeded to trial and was convicted on the original charges, the defendant would be sentenced to a mandatory sentence of natural life imprisonment without parole. However, the State then explained that under the charges he was pleading guilty to, the normal sentencing range for first degree murder would be 20 to 60 years' imprisonment, but the term would be extended to 100 years due to the brutal and heinous nature of the killing. For second degree murder, the State explained that defendant faced a range of 4 to 20 years' imprisonment.

¶ 5     The court admonished the defendant, asked the defendant some questions, and read the charges and the possible penalties to the defendant. The State then presented the factual basis for the plea, stating that on July 20, 1994, the dead bodies of James and Buck were discovered in their bed by James's ex-wife. An autopsy revealed the cause of death for both victims to be gunshot wounds to their heads. During a police interview, the defendant admitted to killing his father and Buck, stating that, at the time of the murder, the defendant and Oakes were overcome by their father's physical and emotional abuse.[1] The defendant went into his father's room while he slept and shot his father in the head with a .22 single shot rifle. Buck awoke from the sound of the shot,

---

[1]Oakes received an aggregate 60-year sentence for the first degree murder of Buck and second degree murder of her father.

and the defendant shot Buck in the head because she saw him. He then left the residence and disposed of the gun.

¶ 6     The court found the defendant's guilty plea knowingly and voluntarily made and found that a factual basis existed for the plea. The court asked if, in light of the plea agreement, the defense waived evidence in mitigation and the preparation of a presentence investigation report. Defense counsel stated that it did. The court asked the State if it had information regarding the defendant's criminal history. The State responded that it was not aware that the defendant had any prior criminal history. The court then accepted the plea, sentencing the defendant, per the terms of the plea, to 90 years' imprisonment for the first degree murder of Buck and a consecutive sentence of 20 years' imprisonment for the second degree murder of his father. The court's written order found the defendant eligible for the extended-term sentence for the murder of Buck due to the exceptionally brutal and heinous nature of the killing. The court also noted that the defendant was eligible for good conduct credit, but the Department of Corrections alone would determine whether he received that credit.

¶ 7     The defendant filed his first postconviction petition in 1999. The trial court denied the petition, and this court granted defense counsel's motion for leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Johnson*, No. 3-06-0868 (2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8     In 2017, the defendant filed an "expedited" motion for leave to file a successive postconviction petition, which is the subject of this appeal. The court granted the defendant leave to file the petition and appointed counsel. Counsel amended the petition to allege the defendant's constitutional rights were violated under *Miller v. Alabama*, 567 U.S. 460 (2012), where he was

sentenced to a *de facto* life sentence without consideration of his youth and attendant circumstances.

¶ 9    Attached to the petition were several exhibits, including a psychological evaluation and report made in preparation for trial, school records, and statements from the defendant's family. The evaluation and accompanying exhibits showed that the defendant suffered from learning disabilities and had a verbal IQ of 77, which placed him in the borderline range of intellectual functioning. The defendant repeated two grades twice in school. The psychological report summarized statements given by multiple witnesses regarding the long-term physical and emotional abuse the defendant and Oakes received at the hand of their father. James was described as a "mean drunk" who shot several family pets in front of the defendant and Oakes, hit the defendant daily with his hands and other objects, such as a screwdriver, and was very controlling. James's nickname for the defendant was " 'Stumb,' stuck between stupid and dumb." James once broke the defendant's arm. He also limited the defendant's social interactions. The defendant had sought help from authorities, including teachers and the police, to no avail. The psychologist noted that the defendant "presented as intensely angry about how his father had treated him yet tearful and deeply remorseful about his actions." The defendant told the psychologist that he did not think about the consequences of the shooting at the time but only thought about living a life without the physical and emotional abuse. The defendant became tearful when speaking with the psychologist, stating that he would take it back if he could. Based on the results of several psychological tests, the psychologist opined that the defendant had a strength in visual perception and visual association, which is "seen in individuals growing up in a hostile social environment." Moreover, the psychologist stated that the test scores suggested that the defendant acted under extreme duress and followed a pattern "common in individuals who have been subjected to physical abuse, to

demeaning evaluations, and to excessive familial control preventing normal development, socialization, and achievement." The psychologist found that the defendant suffered from attention deficit hyperactivity disorder and possessed a limited capacity to think flexibly, weigh alternatives, and anticipate consequences. The psychologist opined that the defendant's failed attempts to stop his father's abuse by seeking help, coupled with his inability to concentrate and control himself, likely caused the defendant to believe killing his father was his only recourse.

¶ 10　　　　The State filed a motion to dismiss the petition, arguing that *Miller* did not apply because the defendant did not receive a mandatory life sentence or a *de facto* life sentence but a discretionary sentence that the defendant agreed to and the court found appropriate. The court granted the motion and dismissed the petition, finding that the constitutional issues the defendant raised could not be established since he entered into a fully negotiated guilty plea.

¶ 11　　　　　　　　　　　　　　　II. ANALYSIS

¶ 12　　　　On appeal, the defendant contends the trial court erred when it dismissed his successive postconviction petition at the second stage of the proceedings. A postconviction proceeding is a collateral proceeding that allows review of constitutional issues that were not, and could not have been, adjudicated on direct appeal. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009). The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) generally contemplates the filing of only one postconviction petition. *Ortiz*, 235 Ill. 2d at 328. However, a defendant may seek leave of court to file a successive postconviction petition. 725 ILCS 5/122-1(f) (West 2016). Where, as here, a defendant is granted leave to file a successive postconviction petition, the petition is effectively advanced to the second stage of postconviction proceedings. See *People v. Wrice*, 2012 IL 111860, ¶ 90; *People v. Almodovar*, 2013 IL App (1st) 101476, ¶ 81. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make

a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). On appeal, our review is *de novo*. *People v. Lee*, 2016 IL App (1st) 152425, ¶ 50.

¶ 13 The defendant's petition alleged that the *de facto* life sentence he received as part of his fully negotiated guilty plea is unconstitutional under the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). Specifically, the defendant claims that the trial court failed to consider his youth and its attendant circumstances prior to accepting his plea and imposing the agreed-upon sentence, based on the United States Supreme Court's decision in *Miller*, 567 U.S. 460, and its progeny.

¶ 14 The eighth amendment of the United States Constitution prohibits cruel and unusual punishment. U.S. Const., amend. VIII. The foundational cases of *Roper v. Simmons*, 543 U.S. 551, 569-73 (2005) (prohibiting capital sentences for juveniles who commit murder), *Graham v. Florida*, 560 U.S. 48, 82 (2010) (prohibiting mandatory life sentences for juveniles who commit nonhomicide offenses), *Miller*, 567 U.S. at 489 (prohibiting mandatory life sentences for juveniles who commit murder), and *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 734 (2016) (finding that *Miller* applies retroactively), collectively hold that juveniles are constitutionally different from adults for purposes of sentencing and establish that additional sentencing protections are thus necessary.

¶ 15 The Illinois Supreme Court has since considered the effects of these cases. In *People v. Holman*, 2017 IL 120655, ¶¶ 37, 40, the court held that both mandatory and discretionary life sentences for juveniles violate the eighth amendment unless the sentencing court considers the defendant's youth and its attendant characteristics as mitigation. The rare juvenile offender may still be sentenced to life imprisonment, "but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption

beyond the possibility of rehabilitation." *Id.* ¶ 46. The court may make this determination only after considering the *Miller* factors, which include, but are not limited to:

> "(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id.*

See also *id.* ¶ 44. Our legislature has since codified the *Miller* factors into a set of nine factors the court must consider when sentencing a juvenile defendant. See 730 ILCS 5/5-4.5-105 (West 2018). These prior holdings also extend to *de facto* life sentences, which the court in *People v. Buffer*, 2019 IL 122327, ¶¶ 40-41, defined as a sentence greater than 40 years.

¶ 16　　　　Before turning to the merits of the defendant's petition, we must address the State's argument that the defendant waived this issue by pleading guilty. "[W]aiver is the voluntary relinquishment of a known right." *People v. Phipps*, 238 Ill. 2d 54, 62 (2010). When determining whether a legal claim has been waived, a reviewing court must examine the particular facts and circumstances of the case and construe waiver principles liberally in favor of the defendant. *Id.*

¶ 17　　　　The State bases its argument on the rule of law espoused in *People v. Jackson*, 199 Ill. 2d 286 (2002), and relied on in *People v. Townsell*, 209 Ill. 2d 543, 545 (2004), that a guilty plea

waives all constitutional claims. In both cases, the question before our supreme court was whether a defendant waived the right to raise a claim pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by pleading guilty. *Jackson*, 199 Ill. 2d at 296; *Townsell*, 209 Ill. 2d at 545. The *Jackson* court stated that, under *Apprendi*, "[e]very fact necessary to establish the range within which a defendant may be sentenced is an element of the crime and thus falls within the constitutional rights of a jury trial and proof beyond a reasonable doubt." *Jackson*, 199 Ill. 2d at 296. The court stated that those were the exact rights that a defendant waived by pleading guilty and, therefore, they could not be heard on appeal from a guilty plea. *Id.* In doing so, the court stated, "*Apprendi* did not deal with novel constitutional rights. Rather, the Court was concerned with the applicability and reach of the well-established constitutional rights to a jury trial and proof beyond a reasonable doubt, rights which a guilty plea is specifically designed to waive." *Id.* at 302.

¶ 18        *Jackson* and *Townsell* are not applicable here. *Apprendi* concerns the State's requirement to prove an element of the crime, which a defendant *explicitly* waives when pleading guilty. However, unlike *Apprendi*, *Miller* did set forth a "novel constitutional right[ ]." *Id.* According to the United States Supreme Court in *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732-36, *Miller* announced a new substantive rule of constitutional law. *Montgomery* stated, "*Miller* *** did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.' " *Id.* at ___, 136 S. Ct. at 734 (quoting *Miller*, 567 U.S. at 472). The rule announced in *Miller* carries a significant risk that the vast majority of juvenile offenders face a punishment that the law cannot impose, which is why it applies retroactively. *Id.* at ___, 136 S. Ct. at 734.

¶ 19    The Supreme Court of Virginia in *Jones v. Commonwealth*, 795 S.E.2d 705, 714-15 (Va. 2017), held that a juvenile who entered into a negotiated plea agreement waived the right to raise a *Miller* challenge. However, our supreme court in *Holman*, 2017 IL 120655, ¶ 40, looked at this case with disfavor, stating that it gave "insufficient regard to the Supreme Court's far-reaching commentary about the diminished culpability of juvenile defendants, which is neither crime- nor sentence-specific." As the *Miller* Court stated, "it is the odd legal rule that does *not* have some form of exception for children." (Emphasis in original.) *Miller*, 567 U.S. at 481. The three-justice dissent in *Jones* also disagreed with the idea that a plea agreement can act as a waiver to all constitutional challenges, noting, as an example, that the Supreme Court has held that the two-part *Strickland v. Washington*, 466 U.S. 668 (1984), test applies to challenges based on the right to effective assistance of counsel. *Jones*, 795 S.E.2d at 726 (Powell, J., dissenting, joined by Goodwyn and Mims, JJ.).

¶ 20    Here, the defendant pled guilty before *Miller* was decided. As stated above, *Miller* set forth a novel constitutional right. The defendant could not have voluntarily relinquished a right that was not available to him at the time that he plead guilty. Stated another way, we find that the defendant could not have waived the right to raise this issue because he pled guilty without the benefit of *Miller* and its progeny.

¶ 21    Because we find that the defendant did not waive this issue, we next consider the merits of the defendant's *Miller* claim. To prevail on a *Miller* claim, a defendant who committed the offense while a juvenile must show (1) he or she was subject to a life sentence, whether mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics, as set forth in *Holman*. *Buffer*, 2019 IL 122327, ¶ 27.

¶ 22        Here, the defendant undoubtedly meets both requirements. He was sentenced to a *de facto* life sentence as his 110-year sentence was greater than 40 years. See *id.* ¶¶ 40-41. Moreover, the record does not show that the court considered the defendant's youth and its attendant characteristics when sentencing the defendant. Therefore, the defendant's sentence violates the eighth amendment, and we vacate his sentence and remand for a new sentencing hearing. See *id.* ¶¶ 46-47. Our supreme court's recent decision in *People v. Lusby*, 2020 IL 124046, does not change our analysis. On remand, the defendant "is entitled *** to be sentenced under the scheme prescribed by section 5-4.5-105 of the Unified Code of Corrections." *Buffer*, 2019 IL 122327, ¶ 47; 730 ILCS 5/5-4.5-105 (West 2018). Since "any inquiry into the *Miller* factors is backwards-looking" (*Holman*, 2017 IL 120655, ¶ 47), we note that the psychological report and other exhibits prepared before the defendant's plea and attached to his petition will be helpful when considering the necessary factors.

¶ 23        The dissent states that the proper remedy is not a new sentencing hearing but remand for the defendant to withdraw his guilty plea. We disagree. Not only did neither party raise this issue, the State specifically conceded that, should we accept the defendant's argument, "the proper remedy is to remand this matter for a new sentencing hearing." We see no reason not to accept the State's concession.

¶ 24        In coming to this conclusion, we agree with the dissent's contention that the United States and Illinois Supreme Courts have yet to consider the question of whether *Miller* applies to fully negotiated plea agreements. However, we find support for our decision to apply *Miller* here from the caselaw itself. It has been consistently held that juveniles are more vulnerable to negative influences and pressure from family and peers, impetuous, and unable to appreciate the risks and consequences of their actions. *Miller*, 567 U.S. at 471; *Holman*, 2017 IL 120655, ¶ 35. Life

sentences, " 'ignore[ ] that [a defendant] might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.' " *Buffer*, 2019 IL 122327, ¶ 19 (quoting *Miller*, 567 U.S. at 477-78). These characteristics are illustrated, here, with the defendant's willingness to agree to a sentence of 110 years. There is no difference between 110 years and the natural life sentence that the defendant faced, but this may not have been fully appreciated or comprehended by a 16-year-old. Moreover, the sentence shows the defendant's inability to deal with prosecutors and vulnerability to outside pressure and influence.

¶ 25                                    III. CONCLUSION

¶ 26        The judgment of the circuit court of Tazewell County is reversed, and the cause is remanded for resentencing.

¶ 27        Reversed and remanded with directions.

¶ 28        JUSTICE SCHMIDT, dissenting:

¶ 29        The majority finds defendant's *de facto* life sentence unconstitutional under the eighth amendment. Defendant's conviction and sentence arose from a fully negotiated plea. This has significant consequences.

¶ 30        Neither the United States Supreme Court nor the Illinois Supreme Court has extended the holding in *Miller* to sentences that result from a fully negotiated plea. To the contrary, under Illinois law, defendant waived any claim of a constitutional error by virtue of his fully negotiated plea. Defendant here entered into a plea agreement in which he stipulated to a *de facto* life sentence. In so doing, defendant relinquished any rights to challenge nonjurisdictional errors or irregularities, including constitutional errors. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004)

- 11 -

(citing *People v. Peeples*, 155 Ill. 2d 422, 491 (1993)). A guilty plea "represents a break in the chain of events that has preceded it," and a defendant who has pled guilty may not claim his constitutional rights were violated before he entered his plea. *People v. Wendt*, 283 Ill. App. 3d 947, 956-57 (1996) (citing *Tollet v. Henderson*, 411 U.S. 258, 267 (1973)). Not only did defendant waive his right to challenge his sentence, he also affirmatively waived his right to present evidence in mitigation and the preparation of a presentence investigation report. As a result, defendant waived any claim that the trial court should have considered his youth and its attendant circumstances in imposing the agreed upon sentence.

¶ 31    The majority reaches a different conclusion on the basis that defendant's argument involves a novel constitutional right. According to the majority, a guilty plea only waives those constitutional rights that are known to defendant at the time of the plea. As *Miller* was not decided prior to the plea, the majority concludes that defendant could not have waived his constitutional claim based on *Miller*. The flaw in the majority's logic is that, even if *Miller* and its progeny created a novel constitutional right, none of those decisions have any application here. Not one of these cases hold that a sentencing court is required to consider a juvenile defendant's youthful characteristics prior to accepting a fully negotiated guilty plea. Consequently, *Miller* and its progeny did not create a novel constitutional right that applies to defendant's case. As such, defendant waived this argument by virtue of his fully negotiated plea.

¶ 32    Defendant is not entitled to a new sentencing hearing based on the procedural posture of this appeal. "[F]ollowing the entry of judgment on a negotiated guilty plea, even if a defendant wants to challenge only his sentence, he must move to withdraw the guilty plea and vacate the judgment so that, in the event the motion is granted, the parties are returned to the *status quo*." *People v. Evans*, 174 Ill. 2d 320, 332 (1996). Conversely, a defendant who enters a negotiated plea

- 12 -

cannot attempt to unilaterally reduce his sentence while holding the State to its part of the agreement. *Id.* at 327. In *People v. Johnson*, 2019 IL 122956, ¶ 47, our supreme court held that where a plea agreement includes sentencing concessions from the State or the dismissal of charges, defendant's only postplea recourse is to move to withdraw the plea. Defendant does not adopt this approach, likely because the process would result in the reinstatement of the first degree murder charge the State agreed to reduce in exchange for the plea.

¶ 33   A defendant may challenge his sentence as void without moving to withdraw a fully negotiated plea in two narrow instances: (1) where a defendant claimed the trial court lacked personal or subject-matter jurisdiction (*People v. Price*, 2016 IL 118613, ¶ 31) and (2) where a defendant challenged the statute under which he was sentenced as facially unconstitutional and void *ab initio* (*People v. Guevara*, 216 Ill. 2d 533, 542-43 (2005)). Defendant's as-applied sentencing challenge does not fall within either exemption. See *People v. Thompson*, 2015 IL 118151, ¶ 32 (recognizing that the void *ab initio* doctrine does not apply to as-applied challenges). Consequently, to have the trial court consider his youthful characteristics for purposes of sentencing, defendant must move to withdraw his guilty plea—a plea that resulted in a sentence defendant himself approved as part of his fully negotiated agreement.

¶ 34   The majority grants defendant a new sentencing hearing due to the State's concession of the issue. However, the law is clear that defendant must move to withdraw his guilty plea. A party may waive an issue, but it cannot waive the law and this court is not required to accept the State's concession. *Beacham v. Walker*, 231 Ill. 2d 51, 60-61 (2008). Neither the State nor defendant cite to any direct authority holding that the proper remedy is to award a new sentencing hearing based on a *Miller* challenge in the context of a fully negotiated plea. To the extent the majority opinion accepts the State's concession, the opinion should be limited to the facts of this case. Consequently,

unless and until our supreme court holds otherwise, the majority's decision to award a new sentencing hearing should be limited to the State's failure to argue the issue.

¶ 35    Finally, although defendant does not seek to withdraw his plea directly, he generally argues that his plea was involuntary. To the extent defendant suggests that facing the possibility of a mandatory life sentence rendered his plea involuntarily made, the trial court admonished defendant prior to accepting his plea. The court found defendant's plea to be knowingly and voluntarily made and accepted his plea. His plea was voluntarily and intelligently made. A plea is not invalid simply because "the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions." *Brady v. United States*, 397 U.S. 742, 757 (1970). In other words, *Miller's* holding does not affect the voluntariness of defendant's plea.

¶ 36    We should affirm the trial court.

**No. 3-18-0357**

| | |
|---|---|
| **Cite as:** | *People v. Johnson*, 2021 IL App (3d) 180357 |
| **Decision Under Review:** | Appeal from the Circuit Court of Tazewell County, No. 94-CF-382; the Hon. Michael D. Risinger, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Peter A. Carusona, and Jay Wiegman, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Thomas D. Arado, and Stephanie Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |